EXHIBIT A

**Rombach v. Saxon Mortgage, Inc., et al.**
**County of Yavapai Superior Court of Arizona Case No.  CV20090133**

## PLEADINGS INDEX - VOLUME I

| Tab # | Document Title or Description | See Legend @ Bottom of Page | |
|-------|------------------------------|:---:|:---:|
| 1 | Verified Complaint | F | 2/10/09 |
| 2 | Application of TRO, OSC re: Preliminary Injunction, Memorandum of Points & Authorities | F | 2/10/09 |
| 3 | Certificate of Compulsory Arbitration | F | 2/10/09 |
| 4 | Summons | D | 2/10/09 |
| 5 | Temporary Restraining Order | F | 2/12/09 |
| 6 | Affidavit of Service | F | 2/12/09 |
| 7 | Affidavit of Service | f | 2/18/09 |
| 8 | Motion to Dismiss | F | 2/25/09 |
| 9 | Nature of Proceedings | F | 2/26/09 |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |

PLEADINGS INDEX LEGEND

S → date document served on parties
F → date document filed with court
D → date document was signed
R → date document was recorded

Rec'd → date document received by PDM (to be used only if no other date is on document)
I → date document is issued
L → date document is lodged with court

E → date document is entered by the court which is indicated by the date document is signed by judge

1776820.wpd

1

1    GEORGE F. X. ROMBACH

2    389   West Rosser
     Prescott, Arizona  86301  (mailing address)
3
     (949) 500-1850   (telephone)
4    (949) 266-8542   (facsimile)

5
     Defendant, In Pro Per
6

7

8              SUPERIOR COURT OF THE STATE OF ARIZOIA

9                  FOR THE COUNTY OF YAVAPAI

10

11   GEORGE F. ROMBACH, an individual,        ) Case No.   CV 2 0 0 9 ...
                                              )
12                  Plaintiff,                )
                                              )
13           vs.                              )        VERIFIED COMPLAINT
                                              )             FOR
14   SAXON MORTGAGE, INC., a corporation;     ) VIOLATIONS OF HOME OWNERSHIP
     DEUTSCHE BANK TRUST COMPANY              )   EQUITY PROTECTION ACT,   REAL
15   AMERICAS. a business entity of unknown   ) ESTATE SETTLEMENT PROCEDURES
     form; FIDELITY NATIONAL TITLE, a         )   ACT,   FEDERAL TRUTH-IN-LENDING
16   business entity of unknown form;         ) ACT, & FAIR CREDIT REPORTING ACT;
     MICHAEL A. BOSCO, JR., an individual;    ) FRAUDULENT MISREPRESENTATION;
17   DOES 1 through 100 inclusive; and        )   BREACH OF FIDUCIARY DUTY;
     DOES 101 through 1000 inclusive.         )   UNJUST ENRICHMENT;   CIVIL
18                                            )  CONSPIRACY;  CIVIL RICO;  QUIET
                                              ) TITLE TO REAL PROPERTY;   USURY;
19                  Defendants.               )        AND  FRAUD
                                              )
20                                            )

21

22           COMES NOW Plaintiff. GEORGE F. ROMBACH. to file the Complaint in this action

23   alleging as follows:

24

25                       NATURE OF THE ACTION

26           1.       This case arises out of Defendants' egregious, ongoing and far reaching fraudulent

27   schemes for improper use of Plaintiff's identity. fraud in the inducement, fraud in the execution,

28   usury, and breaches of contractual and fiduciary obligations as Mortgagee or "Trustee" on the

1  Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller", "Mortgage Aggregator,"

2  "Mortgage Wholesalers," "Trustee of Pooled Assets", "Trustee or officers of Structured

3  Investment Vehicle", "Investment Banker", "Trustee of Special Purpose Vehicle/Issuer of

4  Certificates of 'Asset-backed Certificates'", "Holders of Certificates of Collateralized Mortgage

5  Obligations," "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and

6  Trustee, respectively, of certain mortgage loans pooled together in a trust fund.

7      2.      Defendants are among the participants in the securitization scheme described herein

8  who have devised business plans to reap millions of dollars in profits at the expense of Plaintiff

9  and other investors in certain trust funds, which plan is also the cause, or at least a major

10  contributor, for the melt down of the real estate market in the United States and resulting financial

11  difficulties for the overall economy.

12      3.      In addition to seeking compensatory, consequential and other damages, Plaintiff

13  seeks declaratory relief as to what (if any) party, entity or individual or group thereof is the owner

14  of the promissory note executed at the time of the loan closing, and whether the Deed of Trust

15  (Mortgage) secures any obligation of the Plaintiff, and a Mandatory Injunction requiring

16  reconveyance of the subject property to the Plaintiff or, in the alternative a Final Judgment

17  granting Plaintiff Quiet Title in the subject property, and that, during the pendency of this action,

18  Defendants be enjoined from foreclosing on the Deed of Trust recorded against the property which

19  is the subject of this action.

20

21                              **PARTIES**

22      4.      Plaintiff, GEORGE F. ROMBACH, is an individual residing in the City of

23  Prescott, County of Yavapai, State of Arizona (hereinafter referred to as "ROMBACH")

24  ROMBACH is the nominal payor on the promissory note which is the subject of this action

25  (hereinafter referred to as the "NOTE") and is the original Trustor under the Deed of Trust

26  securing the NOTE (hereinafter referred to as the "TRUST DEED").

27      5.      Defendant, SAXON MORTGAGE, INC., is a corporation which was organized in

28  a jurisdiction unknown to Plaintiff, and is a financial institution that Plaintiff believes was paid a

1   fee to pose as a residential mortgage lender in connection with the transaction which is the subject

2   of this action, and as such is actually a "Loan Seller" rather than a lender.  Said Defendant also

3   operates under the name of Saxon Mortgage Services, Inc., which may also have been formerly

4   known as Meritech Mortgage Services, Inc.  It is unknown to Plaintiff whether or not Saxon

5   Mortgage Services, Inc., by that name or any other name, is a separate corporation, but alleges that

6   there exists such a unity of interest that any seperateness should ignore and that such entity or

7   entities should be treated as one (hereinafter collectively referred to as "SAXON").

8        6.      Defendant, DEUTSCHE BANK TRUST COMPANY AMERICAS, is a form of

9   business entity unknown to Plaintiff which is organized in a jurisdiction unknown to Plaintiff

10  (hereinafter referred to as "DEUTSCHE BANK").  Plaintiff believes that DEUTSCHE BANK and

11  SAXON have a close relationship and/or affiliation that is unknown and undisclosed to Plaintiff.

12       7.      Defendant, FIDELITY NATIONAL TITLE, is a form of business entity unknown

13  to Plaintiff which is organized in a jurisdiction unknown to Plaintiff, which was the original

14  Trustee under the TRUST DEED (hereinafter referred to as "FIDELITY").  Plaintiff believes that

15  FIDELITY, DEUTSCHE BANK and SAXON have a close relationship and/or affiliation that is

16  unknown and undisclosed to Plaintiff.

17       8.      Defendant, MICHAEL A. BOSCO, JR., is believed by Plaintiff to be an Attorney

18  at Law in practice in Phoenix Arizona, and is the successor or substituted Trustee under the

19  TRUST DEED (hereinafter referred to as "BOSCO").

20       9.      Defendants, DOES 1-100 inclusive, are undisclosed "Mortgage Brokers," "Loan

21  Originators," "Loan Sellers", "Mortgage Aggregators," "Mortgage Wholesalers," "Trustees of

22  Pooled Assets", "Trustees or officers of Structured Investment Vehicles", "Investment Bankers",

23  "Trustees of Special Purpose Vehicle/Issuer of Certificates of 'Asset-backed Certificates'",

24  "Holders of Certificates of Collateralized Mortgage Obligations," "Sellers of 'Asset-Backed'

25  Certificates Shares (or bonds)," and/or "Special Servicers" whose identity is unknown to Plaintiff,

26  and who Plaintiff will seek to discover during this action.  Plaintiff is ignorant of the true names

27  and capacities of theses defendants sued herein as DOES 1-100 inclusive, and therefore sues these

28  defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names

1    and capacities when ascertained.

2         10.    Defendants, DOES 101-1000 inclusive, are undisclosed investors in Shares or

3    Certificates of Collateralized Mortgage Securities or other Asset-Backed Securities that relate to

4    the NOTE and TRUST DEED whose identity is unknown to Plaintiff, and who Plaintiff will seek

5    to discover during this action.  Plaintiff is ignorant of the true names and capacities of defendants

6    sued herein as DOES 101-1000 inclusive, and therefore sues these defendants by such fictitious

7    names. Plaintiff will amend this complaint to allege their true names and capacities when

8    ascertained.

9         11.    Plaintiff is informed and believes and thereon alleges that, at all times herein

10   mentioned, each of the Defendants sued herein was the agent and employee of each of the

11   remaining Defendants and was at all times acting within the purpose and scope of such agency and

12   employment.

13        12.    Plaintiff is informed and believes and thereupon alleges that each of the Defendants

14   claim or might claim an interest in the PROPERTY adverse to Plaintiff herein. However, the claim

15   of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable

16   right, claim, or interest in the PROPERTY.

17

18                                    **THE PROPERTY**

19        13.    The property, which is the subject of this action, is the principle dwelling place of

20   Plaintiff, and is a single family residence structure located in the City of Prescott, County of

21   Yavapai, State of Arizona legally described as "Lot 61,    REPLAT OF EAGLE RIDGE,

22   according to the plat of record in Book 28,  Page 95, Records of Yavapai County, Arizona"

23   commonly known as "252 West Soaring Avenue, Prescott, AZ 86301-2103" and identified as

24   "Tax Parcel No.: 105-08-067A" (hereinafter referred to as the "PROPERTY").

25        14.    The PROPERTY has numerous unique and unusual features including but not

26   limited to a wine cellar, sauna, jetted tub, large library, custom designed and milled hardwood

27   floors, fountain, mature landscaping and a 55 foot flag pole.

28        15.    Many of the features of the PROPERTY are the personal designs and fabrication of

1 | ROMBACH to which he has a personal attachment.

2 |     16.    A money judgment could not fully compensate ROMBACH for the loss of the

3 | PROPERTY.

4 |

5 | **THE NOTE AND TRUST DEED**

6 |     17.    The NOTE and TRUST DEED are dated May 23, 2005 and have an original

7 | principle balance of four hundred and seventy-seven thousand dollars ($477,000.00), and the

8 | TRUST DEED was recorded on June 2, 2005 as Instrument No. 4270-647. SAXON carries the

9 | NOTE and TRUST DEED on its books as Loan Number 0011878528.

10 |     18.    Based on Plaintiff's best recollection he believes that the terms of the NOTE

11 | provided for a fixed rate of interest for an initial period at a rate that approximated the then market

12 | rate of interest.   Plaintiff's recollection is that such rate was to be approximately 5.75%.

13 | Thereafter the terms of the NOTE provided that the interest rate adjusted periodically based on an

14 | index value plus a margin.  SAXON represented that the formula was designed to reflect an

15 | interest rate that approximated the then market rate of interest.   The last interest rate for the

16 | NOTE which SAXON has disclosed is 10.875% which was effective for payments due on and

17 | after January 1, 2008. That rate was approximately twice the then market rate for interest.

18 |     19.    The terms of the NOTE provided that the amount of the payments due adjusted

19 | each time that the interest rate was adjusted. Based on Plaintiff's best recollection he believes that

20 | the initial payment due under the NOTE approximated two thousand, five hundred dollars

21 | ($2,500.00). Pursuant to the final disclosure by SAXON the amount of the payment due under the

22 | NOTE was to be four thousand, three hundred, twenty-two dollars and eighty-one cents

23 | ($4,322.81).

24 |     20.    During the initial period of the NOTE,  ROMBACH paid all of the payments that

25 | became due.   When the payments began to adjust ROMBACH began to have problems

26 | maintaining the adjusted payments due on the NOTE, and was no longer able to maintain the

27 | payments when the interest rate adjusted to 10.875%.

28 |     21.    ROMBACH attempted to make the January 1, 2008, February 1, 2008, March 1,

1    2008 and April 1, 2008 payments at the previous payment amount, but SAXON rejected and

2    refused each of those payments.

3        22.     On April 25, 2008 SAXON recorded a "Substitution of Trustee" and a "Notice of

4    Trustee's Sale". The Notice of Trustee's Sale provided that the PROPERTY would be sold by

5    public auction on July 25, 2008 at 11:00 a.m. on the front steps of the Old Yavapai County

6    Courthouse. ROMBACH did **NOT** receive notice of either of those documents or actions at or

7    about the date that they were recorded. However, ROMBACH did receive a copy of the "Notice

8    of Trustee's Sale" during the Fourth of July holiday weekend when it was posted on the front door

9    of the PROPERTY.

10       23.     To protect the PROPERTY from foreclosure, on July 18, 2008 ROMBACH filed a

11    Petition under Chapter 7 of the United States Bankruptcy Code with the United States Bankruptcy

12    Court, District of Arizona, Case No. 08-08962. That case is now complete and the automatic stay

13    has been lifted effective February 10, 2008.

14       24.     The Trustee's sale of the PROPERTY has now been set for February 12, 2008 at

15    11:00 a.m. on the front steps of the Old Yavapai County Courthouse.

16

17                      **ATTEMPED DISPUTE RESOLUTION**

18       25.     In the inducement to execute the NOTE and TRUST DEED, SAXON represented

19    to ROMBACH that after an initial period, which Plaintiff's recalls to have two (2) years, SAXON

20    would, upon request, renegotiate the NOTE to a then market rate fixed interest rate.

21       26.     During the 2007 at or near the end of the initial period it began to become apparent

22    to ROMBACH that interest rate adjustment formula was not operating as it had been represented

23    by SAXON that it would. In an attempt to preclude the present situation, ROMBACH began, long

24    before any default, to attempt to renegotiate the NOTE in a business like manner pursuant to

25    SAXON's representation.

26       27.     The attempts by ROMBACH to resolve the matter included communications by

27    telephone, internet and mail. These efforts have been very numerous and have been continuous

28    from mid 2007 and continuing through the entire bankruptcy proceeding. SAXON has failed and

1   refused to even acknowledge these communications let alone enter into any meaningful
2   negotiations.

3        28.   When this situation was disclosed during the bankruptcy proceeds, the bankruptcy
4   judge directed the attorney for SAXON to provide ROMBACH with contact information of a
5   SAXON representative with the authority to enter into such negotiations. ROMBACH has not
6   received any such information in spite of many attempts to follow up with that attorney for
7   SAXON.

8               **THE SECURITIZATION SCHEME GENERALLY**

9        29.   The Loan Seller (SAXON) is a financial institution that was paid a fee to pose as a
10   residential mortgage lender, when in fact the source of loan funds and the actual lender (Investors
11   in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties
12   whose identities and receipt of fees and profits were withheld from Plaintiff at Closing and despite
13   numerous requests continue to be withheld from Plaintiff by the Defendants contrary to the
14   requirements of Federal Law and applicable State Law.

15        30.   Unknown to Plaintiff, the Loan Seller, acting as principal in its relationships with
16   the mortgage broker and mortgage originator, induced the Plaintiff into a transaction that did not
17   and could not meet normal underwriting standards for a residential mortgage. The Loan Seller
18   posed as a conventional mortgage lender thus leading Plaintiff to reasonably believe that the Loan
19   Seller, the mortgage broker, and the loan originator had an interest in the success (repayment of
20   the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of
21   the "closing" of the subject loan transaction.

22        31.   In fact, the Loan Seller, mortgage broker, loan originator, title agent, escrow agent
23   and Trustee on the Deed of Trust, had no financial stake (i.e., liability) in the transaction and no
24   interest other than obtaining Plaintiff's signature on a "loan" that could never be repaid, contrary
25   to representations and assurances from the conspiring participants in this fraudulent scheme.

26        32.   Plaintiff relied upon the due diligence of SAXON, the apparent "Lender," (i.e.,
27   actually the Loan Seller) in executing and accepting the closing documents. In fact, no "lender"
28   was involved in the closing in the sense of an entity performing due diligence and evaluation

1 | pursuant to national standards for underwriting and evaluating risk of loaning money in a
2 | residential loan closing.

3 |       33.    Thus, no bank or other financial institution actually performing under the standards,
4 | rules and regulations governing such institutions was the "lender" which is the basis for Plaintiff's
5 | cause of action for usury, to wit: that the disclosed and undisclosed costs and charges, when added
6 | to the other terms of the loan, and amortized over the real expected life of the "loan" exceeds the
7 | limits set by the State Legislature for usury and is not subject to exemption because the presence
8 | of a financial institution in the transaction was a ruse in which the form of the transaction covered
9 | over and mislead the Plaintiff as to the real parties in interest and the fees generated by the
10 | production of the subject "loan transaction."

11 |       34.    Their purpose was solely to collect fees, rebates, kickbacks and profits that were
12 | never disclosed to Plaintiff and have only recently been discovered by Plaintiff through
13 | consultation with experts in securitization of residential mortgage loans, and diligent research
14 | including the filings of some parties with the Securities and Exchange Commission which disclose
15 | the normal manner of operating this fraudulent scheme.

16 |       35.    The Loan Seller (SAXON) was named as the Payee on the subject promissory note
17 | and the beneficiary under the mortgage terms allegedly securing the performance under the subject
18 | note. The "Trustee" was named as the Trustee on the Deed of Trust executed at the time of the
19 | alleged "closing" of the "loan transaction." In accordance with State law, the Deed and terms of
20 | security were recorded in the county records.

21 |       36.    Notwithstanding the above, and without the knowledge of the Plaintiff, the Loan
22 | Seller had entered into Assignment and Assumption Agreements with one or more parties and
23 | Pooling and Service Agreements with one or more parties including but not limited to the
24 | mortgage aggregator prior to or contemporaneously with the "Closing" of the subject "loan
25 | transaction." Under the terms of these agreements, the Loan Seller received a sum of money
26 | which was allocated to the subject loan transaction.

27 |       37.    Contrary to the documents presented before and during the "closing" of the "loan
28 | transaction" the Loan Seller (SAXON) was neither the source of funding nor the "Lender."

38.     Thus, at the time of recording, the source of funding and the "Lender" was a different entity than the nominal mortgagee or beneficiary under the deed of trust and was neither named nor disclosed in any fashion.

39.     The security for the "loan" thus secured an obligation that had been paid in full by a third party. Said third party(ies) was acting as a financial institution or "Lender" without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State or Federal authorities and/or agencies.

40.     Some form of documentation represented by the Loan Seller to the Mortgage Aggregator was presented before or contemporaneously with the "Closing" of the loan transaction. In some cases the documentation included actual copies of the documents presented at "Closing."

41.     In most cases it consisted of either forged blank notes or vague descriptions of the content of the notes that were placed into the pool of assets that would be "securitized."

42.     Plaintiff has been informed and does based thereon believe that numerous cases have been discovered in which the "loan closing" either did not take place at all or included documentation substantially different than the original offer and acceptance and substantially different than what could have been reported to the Mortgage Aggregator prior to the "closing." Plaintiff has discovered numerous cases in which foreclosure has proceeded despite the fact that no loan closing was ever consummated, no papers were ever signed, or the loans were properly rescinded properly under law.

43.     Plaintiff does not know what version of documentation was presented to the Mortgage Aggregator and if the Mortgage Aggregator took one or more varying descriptions of the alleged "loan documents" into more than one pool of assets which was eventually sold for the purpose of securitizing the assets of the pool which included the subject loan transaction either once or more than once. Plaintiff has requested such information numerous times only to be met with complete silence and defiance or obfuscation from the Defendants.

44.     There is no assignment of the subject mortgage in the county records, but there is a nonrecorded "Pooling and Services" Agreement and a non-recorded Assignment and Assumption

1   Agreement which appears to substitute the Trustee over the pooled assets for the nominal Trustee

2   in the Deed of Trust.

3       45.    The powers of this second Trustee were in turn transferred to either a Trustee for a

4   Special Investment Vehicle (which performed the accounting and reporting of the pool assets) or

5   to an investment bank Collateral Debt Obligation manager whose department performed the

6   accounting and reporting of the pool assets.

7       46.    The reporting of the pool assets consisted principally of descriptions of the notes

8   "signed" by borrowers and limited descriptions of the general terms of the note such that the note

9   appeared to be more valuable than the initial terms of payment by the "borrower."

10      47.    The note from the subject "loan transaction" was eventually allocated into a new

11  corporation (Special Purpose Vehicle) formed for the express purpose of holding the pooled assets

12  under certain terms.

13      48.    The terms included the allocation of payments from one note to pay any deficiency

14  in payment of another note in unrelated "loan transactions" contrary to the terms of each such note

15  which required payments to be allocated to the principal, interest, escrow and fees associated with

16  only that specific "loan transaction."

17      49.    Whether such "deficiency" was caused by the difference between the higher

18  general terms of description of the note or the lower actual payment requirements from the

19  "borrower" is not known, despite numerous requests for accounting and the refusal of Defendants

20  to provide any such information.

21      50.    The Investment Banking firm arranged through payment for a false inflated

22  appraisal of the certificates and/or issuer of the certificates that would be sold to investors in much

23  the same way as it had procured the false appraisal of the property that "secured" the "loan

24  transaction." In addition, insurance was purchased from proceeds of this transaction, credit default

25  swaps were purchased from proceeds of this transaction, the investors investments were

26  "oversold" to create a reserve pool from which the SPV could pay deficiencies in payments, and

27  the SPV created cross-collateralization agreements and  over-collateralization of the pool assets to

28  assure payments to the investors, thus creating co-obligors on the payment stream due from the

1   Plaintiff on the subject "loan transaction."

2        51.    The pool assets, including the Plaintiff's subject "loan transaction " were pledged
3   completely to the owners of the "asset-backed securities." All the certificates were then transferred
4   to a Seller who in turn sold the certificates in varying denominations, each of which had slightly
5   different terms depending upon which segment of the pool (tranche) secured the investment.

6        52.    If there is a holder in due course of the Plaintiff's note arising from the subject
7   "loan transaction" it is the investors who purchased said securities (certificates). Some of said
8   securities are held by the original purchaser thereof, others were sold at weekly auction markets,
9   others were paid by re-sales of property that was "secured", others were paid from prepayments,
10  others were paid by sale at full or partial price to the investment bank that originated the entire
11  transaction, some of which might be held by the Federal Reserve as non-recourse collateral, and
12  others might have been paid by one or more of the insurance, credit default swaps, cross
13  guarantees or cross collateralization of the segment of the pool that secured the relevant investor
14  who owned certificates backed by a pool of assets that included the subject "loan transaction."

15       53.    It is doubtful that any of the Defendants have any knowledge or have made any
16  effort to determine whether the putative holders in due course have been paid in whole or in part.
17  It can only be said with certainty that these Defendants seek to enforce loan documents for which
18  they have already been paid in full plus illegal fees for participating in an illegal scheme. These
19  Defendants seek to add insult to injury by demanding ownership of the property in addition to the
20  receipt of payment in full long before any delinquency or default even allegedly occurred.

21       54.    In order for these Defendants to maintain legal standing in connection with the
22  subject loan transaction they are required to show the entire chain of title of the note and the entire
23  chain of title of the mortgage. They have refused to do this despite numerous requests, leading
24  Plaintiff to concluded that the Defendants cannot produce such evidence of a complete chain of
25  title or are intentionally withholding the information that would show breaks in such chain.

26       55.    Plaintiff is left in the position of being in an adversary proceeding with ghosts.
27  While these Defendants have informally offered or considered providing indemnification for any
28  third party claims, the fact remains that any relief awarded these defendants, any standing allowed

1    to these defendants would expose the Plaintiff to multiple claims and suits from an unknown

2    number of parties and entities that all claim, possibly correctly, to the holders in due course. Any

3    grant of a certificate of title to an entity other than Plaintiff or the nominal mortgagee creates an

4    incurable defect in title.

5         56.    There is no recording of any document in the county records which predates the

6    Defendants' attempt to initiate foreclosure and/or eviction or which would authorize them to

7    proceed.

8         57.    Mortgage backed Securities (MBS) Certificates are "pass through Certificates,"

9    where the Trust has elected to be treated as a Real Estate Mortgage Investment Conduit

10   ("REMIC") to enjoy the tax exempt status allowed under 15 U.S.C. §§806A-G.

11        58.    It is significant to note that REMIC regulations impose very strict limitations as to

12   the nature of the investments a REMIC trust may make (i.e. "permitted investments") and

13   transactions which it may not undertake (i.e. "prohibited transactions").

14        59.    Any violation of REMIC regulations has significant tax implications for the Trust,

15   as well as all Certificate holders. For example, any income realized by the Trust from a

16   "prohibited transaction" is taxed at 100%.

17        60.    The REMIC regulations also provide that any entity that causes the REMIC

18   regulations to be violated is liable to the Trust and the Certificate holders for the entire amount of

19   the tax.

20        61.    Only income from "qualified mortgages" and "permitted investments" may enter a

21   REMIC trust.

22        62.    A "qualified mortgage" is an obligation (i.e. mortgage) which is principally secured

23   by an interest in real property which (1) was transferred to the Trust on the startup date, (2) was

24   purchased by the REMIC Trust within 3 months after the startup date or (3) any qualified

25   replacement mortgage.

26        63.    Permitted investments are limited to:  (1) Cash Flow Investments (i.e. temporary

27   investment where the Trust holds money it has received from qualified mortgages pending

28   distribution to the Certificate holders);  (2) Qualified Reserve Assets (i.e. any *intangible* property

1 | which is held for investment and is part of a reasonably required reserve to provide for full

2 | payment of expenses of the REMIC or amounts due on regular interests in the event of defaults on

3 | qualified mortgages or lower than expected returns on cash flow investments.  These investments

4 | are for very defined purposes and are to be passive in nature. They must be "reasonably required.";

5 | (3) Liquidation Proceeds from "foreclosed property" which is acquired in connection with the

6 | default or imminent default of a "qualified mortgage" held by the Trust.

7 |        64.    In order to maintain the REMIC status, the Trustee and the Servicers must ensure

8 | that the REMIC receives no income from any asset that is not a "Qualified Mortgage" or a

9 | "Permitted Investment." 26 U.S.C. § 806F(a)(2)(B).

10 |        65.    Prohibited Transactions include the disposition of a qualified mortgage (except

11 | where the disposition is "incident to" the foreclosure, default, or imminent default of the

12 | mortgage); or the receipt of any income from an asset that is not a Qualified Mortgage or a

13 | Permitted Investment. 26 U.S.C. § 860F(a)(2)(B).  They are taxed in an amount 100% of the

14 | REMIC's net income from such prohibited transaction. 26 U.S.C. § 860F(a)(1).

15 |        66.    Contributions of any "property" – e.g., cash, mortgages, etc. – made to the REMIC

16 | are taxed at 100% of the contribution, except for the four following exceptions: (1)  Contributions

17 | to facilitate a "clean up call" (i.e. the redemption of a class of);  (2) regular interest, when by

18 | reason of prior payments with respect to those interests;  (3) the administrative costs associated

19 | with servicing that class outweigh the benefits; and (4) of maintaining the class.  Reg. § 1.860G-

20 | 2(j)(1).

21 |        67.    Any cash payment in the nature of a guarantee, such as payments to the REMIC

22 | Any violation of REMIC regulations will defeat the privileged tax status and will subject the

23 | REMIC to 100% taxation, plus penalties and interest. These taxes and penalties are ultimately

24 | borne by the Certificate holders, under a surety bond, letter of credit or insurance policy.

25 |        68.    Any cash contribution during the three month period after the start-up day; and any

26 | cash contribution to a qualified reserve fund made by a holder of a residual interest.

27 |        69.    On a monthly basis, the Investment Banking firm and/or its agents, servants or

28 | employees compiled, individually and in concert, oversaw and approved all the information

1   contained in the Distribution Reports and electronically sent same to certain parties.

2         70.    Based upon research performed by experts on behalf of the Plaintiff and others. The
3   data regarding the number of bankruptcies, aggregate Special Servicing Fees, and aggregate Trust
4   Fund Expenses was routinely incomplete, false, and/or misleading.

5         71.    Further, said report intentionally obfuscated the illegal allocation of payments, the
6   failure to disclose payments, and the effect on the alleged obligation of the Plaintiff, to wit: despite
7   numerous insurance products, credit default swaps, cross collateralization, over collateralization
8   and polling at multiple levels, money received by some or all of these Defendants under the
9   pretense of it being a "Mortgage Payment" was in fact retained, reserved, applied to non-
10  performing loans to make them appear as though they were performing loans, or paid as fees to the
11  enterprise Defendants described in this complaint.

12        72.    Based upon the failure of the Defendants to respond, Plaintiff has every reason to
13  believe that the party receiving the payments (SAXON) is neither the holder in due course of the
14  note nor the owner of any rights under the mortgage provisions of the deed of trust.

15        73.    Further, Plaintiff has every reason to believe that his payments are not being
16  forwarded to the holder in due course of the note nor to any other authorized party.

17        74.    Accordingly, Plaintiff is in jeopardy, to wit: the true holder in due course and
18  potentially dozens or even thousands of third parties could come forward claiming an unsatisfied
19  interest in the promissory note and may or may not be subject to Plaintiff's various affirmative
20  defenses and counterclaims.

21        75.    In fact, research has revealed that in various states, such security interests are being
22  purchased by speculators who then seek to enforce said liability, preventing the Plaintiff from
23  claiming the most basic defense, to wit: payment exactly as required by the terms of the note
24  which was cashed by the receiving party (SAXON) apparently without authority to do so.

25        76.    Defendants have failed and refused to reveal the true source of funds for the alleged
26  loan transaction, further preventing Plaintiff's right of three day rescission under the Truth in
27  Lending Act because the real lender has not been revealed and therefore the Notice of Rescission
28  by the Plaintiff has no authorized addressee.

1  carried a principal balance of $300,000, the enterprise Defendants sold the "investment"

2  certificates on that "loan" for approximately $740,000 and thus received $440,000 in illegal,

3  fraudulent and undisclosed "profits" or "fees" in a $300,000 mortgage transaction.

4      85.    Thus, the economics of mortgage origination changed, to wit: the worse the loan,

5  the more money the enterprise defendants made as long as there were enough people, like

6  Plaintiff, whose identify was used to hide the high volume (and high profit) of toxic waste loans.

7      86.    It was thus in the financial interest of the enterprise Defendants to create unrealistic

8  and false market expectations, deceiving the public as a whole in specified geographical areas of

9  the country that were identified by these enterprise Defendants as targets.

10     87.    Since these illegal profits were not disclosed, the Plaintiff is entitled to an

11 accounting and a pro rate share of the profits obtained by the illegal, improper and undisclosed use

12 of his name, credit rating and identity.

13     88.    Based upon the opinion of Plaintiff's experts, Plaintiff's share of said profits could

14 be in excess of $1 million.

15     89.    The Distribution Reports are supposed to accurately reflect the "financial health of

16 the trust," and provide Certificate holders, with important data such as the number of loans in

17 bankruptcy, the aggregate amount of special servicing fees, and the aggregate amounts of trust

18 fund expenses.  Each and every one of these categories is essential to assess its profit and loss

19 potential in the REMIC entity. Furthermore, this data is used by bond rating agencies to assess the

20 value of the Certificates.

21     90.    Based upon the filings and information of the Plaintiff, it appears that no accurate

22 accounting has ever been presented to anyone and that, therefore, the identity and status of any

23 putative holder in due course is completely shrouded in secrecy enforced by these Defendants,

24 their agents, servants and employees.

25     91.    Unreported repurchases of certificates or classes of certificates would and did result

26 in a profit to the REMIC that went unreported, and which was not credited to Borrowers where the

27 repurchase was, as was usually the case, the far less than the original investment.

28     92.    While the Plaintiff would never have entered into a transaction in which the true

77.     The fact that the "loan" was table-funded without a disclosed source of funds and without disclosing tens of thousands of dollars in fees all contrary to the requirements of State and Federal law was withheld from plaintiff by Defendants and continues to be withheld by them. But for the the expenditure of time, money and effort on research, Plaintiff would not have discovered the various deceptions of the Defendants at the alleged loan closing.

78.     Plaintiff alleges the closing was an "alleged loan closing" because in fact it was part of an undisclosed hidden illegal scheme to issue unregulated securities (mortgage backed securities) based upon the negotiation of non-negotiable notes, the terms of which had been changed, altered, amended or modified AFTER the execution by the Plaintiff.

79.     Defendants then purported to "negotiate" the note by adding terms which allowed the proceeds of the note to be allocated to the payment of the notes of other borrowers and adding co-obligors as aforesaid through insurance, guarantees, additional collateralization and reserves all of which were undisclosed, as aforesaid.

80.     The note was not negotiable because it was no longer an unconditional promise to pay by the original borrower. The terms had changed, adding conditions to payment that were inherent in the "securitization process" that Defendants fraudulently promoted.

81.     Said "negotiation" of Plaintiff's note was in actuality the theft of his identity to hide the vast number of "toxic waste mortgages, notes and obligations that the enterprise defendants were selling up through their "securitization" chain.

82.     The result of this was that notes from other borrowers wherein there was virtually no possibility of performance were disguised as being of the same class as Plaintiff's Note.

83.     These disguised notes carried interest rates sometimes as high as 16.5% which under disguise were then sold to unsuspecting investors as triple AAA investments providing the investor with approximately 6-8% return.

84.     By selling virtually worthless "negotiable" paper at par or in the case of toxic waste paper, 2-5 times par, the enterprise defendant reaped profits in the hundreds of thousands of dollars on each such "transaction." for example, if the toxic waste paper would under cover of Plaintiff's credit rating and identity was sold at an investment return of 6% and the mortgage note

1   nature of this scheme was revealed, any profits, refunds, rebates, fees, points, costs or other

2   income or gain should be credited on some basis to said borrowers including Plaintiff herein.

3

4          **OTHER GENERAL ALLEGATIONS OF THE FACTS OF THIS CASE**

5          93.    The end result of the false and misleading representations and material omissions

6   of Defendants as to the true nature of the mortgage loan actually being processed, which said

7   Defendants had actual knowledge was in direct conflict with the original Uniform Residential

8   Loan Application, early TIL, and Plaintiff's stated intentions and directions to said Defendants at

9   the time of original application for the loan, fraudulently caused Plaintiff to execute predatory loan

10  documents.

11         94.    At no time whatsoever did Defendants ever advise Plaintiff (nor, as far as Plaintiff

12  can determine, any "investor" in certificates of mortgage-backed securities) that: (1) the mortgage

13  loan being processed was not in their best interest;  (2) the terms of the mortgage loan being

14  processed were less favorable than the fixed-rate loan which Plaintiff sought and been advised that

15  he qualified for;  (3) that the mortgage loan was an inter-temporal transaction (transaction where

16  terms, risks, or provisions at the commencement of the transaction differ at a later time) on which

17  Plaintiff was providing cover for Defendants' illegal activities;  (4) that Plaintiff would likely be

18  placed in a position of default, foreclosure, and deficiency judgment regardless of whether he met

19  his loan obligations once the true lender or true holder(s) in due course appeared;  (5) that the

20  originating "lender", Defendant SAXON, had no intention of retaining ownership interest in the

21  mortgage loan or fully servicing same and in fact may have and probably had already pre-sold the

22  loan, prior to closing, to a third party mortgage aggregator pursuant to previously executed

23  documentation (Assumption and assignment Agreement, Pooling Services Agreement, etc. all

24  executed prior to Plaintiff's "loan Closing"; (6) that the mortgage loan was actually intended to be

25  repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators

26  and investment bankers (including but not limited to Defendants DOES 1-100), for the ultimate

27  purpose of bundling the Plaintiff mortgage with hundreds or perhaps thousands of others as part

28  of a companion, support, or other tranche in connection with the creation of a REMIC security

1  known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed
2  security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed
3  Securities Certificates, created the same year as the closing);   (7) that the TRUST DEED and
4  NOTE may be sold, transferred, or assigned separately to separate third parties so that the later
5  "holder" of the NOTE, or interest therein, may not be in privity with or have the legal right to
6  foreclose in the event of default;   (8) that in connection with the multiple downline resale and
7  assignment of the NOTE and TRUST DEED that assignees or purchasers of the NOTE may make
8  "pay-downs" against the NOTE which may effect the true amount owed by the Plaintiff on the
9  NOTE;  and  (9) that a successive assignee or purchaser of the NOTE and TRUST DEED may not,
10  upon assignment or purchase, unilaterally impose property insurance requirements different from
11  those imposed as a condition of the original loan (also known as prohibition against increased
12  forced-placed coverage) without the Plaintiff' prior notice and consent.

13      95.    Plaintiff is informed and does based thereon believe that as a result of the closing
14  and in connection therewith, Defendants may have placed the NOTE and TRUST DEED into a
15  pool of a sub-prime adjustable rate mortgage programs, with Defendants intentionally misleading
16  Plaintiff and the other borrowers and engaging in material omissions by failing to disclose to
17  Plaintiff and other borrowers the fact that the nature of the mortgage loan applications, or some of
18  them, may have been materially changed without their knowledge or consent, and that Plaintiff
19  was being placed into a pool where the usual loan was an adjustable rate mortgage program
20  despite borrowers not being fully qualified for such a program.

21      96.    Plaintiff believes that prior to the closing, Defendant SAXON failed to provide to
22  Plaintiff the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 CFR
23  (also known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide
24  the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA")
25  pursuant to 24 FR sec. 3500.6 and 3500.7, otherwise known as the GFE.

26      97.    Plaintiff also believes that Defendant SAXON intentionally failed and/or refused to
27  provide Plaintiff with various disclosures which would indicate to the Plaintiff that the consumer
28  credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the

1  final TIL showed a "fixed rate" schedule of payments, but did not provide the proper disclosures

2  of the actual contractually-due amounts and rates.

3     98.   Plaintiff also believes that Defendants failed and/or refused to provide a HUD-1

4  Settlement Statement at the closing which reflected the true cost of the consumer credit

5  transaction. As Defendants failed to provide an accurate GFE or Itemization of Amount Financed

6  ("IOAF"), there was no disclosure of a Yield Spread Premium ("YSP", which is required to be

7  disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of the loan.

8     99.   As a direct and proximate result of these probable failures to disclose as required

9  by the Truth–In–Lending Act, Defendant MOTION received a YSP in a substantial amount of

10  without preliminary disclosure, which is a *per se* violation of 12 CFR sec. 226.4(a), 226.17 and

11  18(d) and (c)(1)(iii). The YSP raised the interest rate which was completely unknown to or

12  approved by the Plaintiff, as they did not received the required GFE or IOAF.

13     100.   In addition Plaintiff believes that the completely undisclosed YSP was not

14  disclosed by Defendant in their broker contract, which contract was blank in the area as to fees to

15  be paid to Defendant. This is an illegal kickback in violation of 12 USC sec. 2607 as well as State

16  law which gives rise to all damages claims for all combined broker fees, costs, and attorneys' fees.

17     101.   Plaintiff also believes that the Amount Financed within the TIL is also understated

18  which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as

19  the Amount Financed must be completely accurate with no tolerance.

20     102.   Defendants were under numerous legal obligations as fiduciaries and had the

21  responsibility for overseeing the purported loan consummation to insure that the consummation

22  was legal, proper, and that Plaintiff received all legally required disclosures pursuant to the Truth-

23  In-Lending Act and RESPA both before and after the closing.

24     103.   Plaintiff, not being in the consumer lending, mortgage broker, or residential loan

25  business, reasonably relied upon the Defendants to insure that the consumer credit transaction was

26  legal, proper, and complied with all applicable laws, rules, and Regulations.

27     104.   At all times relevant hereto, Defendants regularly extended or offered to extend

28  consumer credit for which a finance charge is or may be imposed or which, by written agreement,

1 │ is payable in more than four (4) installments and was initially payable to the person the subject of

2 │ the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act,

3 │ 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2 (a)(17).

4 │      105.   At the closing of the subject "loan transaction", Plaintiff executed NOTE and

5 │ TRUST DEED in favor of Defendants as aforesaid. These transactions, designated by Defendants

6 │ as a Loan, extended consumer credit which was subject to a finance charge and which was initially

7 │ nominally payable to the Defendants.

8 │      106.   As part of the consumer credit transaction the subject of the closing, Defendants

9 │ retained a security interest in the PROPERTY which was Plaintiff's principal residential dwelling.

10 │      107.   Plaintiff believes that Defendants engaged in a pattern and practice of defrauding

11 │ Plaintiff in that, during the entire life of the mortgage loan, Defendants failed to properly credit

12 │ payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit

13 │ fees.

14 │      108.   Plaintiff believes that Defendants had actual knowledge that the Plaintiff's accounts

15 │ were not accurate but that Plaintiff would make further payments based on Defendants' inaccurate

16 │ accounts.

17 │      109.   Plaintiff made payments based on the improper, inaccurate, and fraudulent

18 │ representations as to Plaintiff's accounts.

19 │      110.   As a direct and proximate result of the actions of the Defendants set forth above,

20 │ Plaintiff overpaid in interest.

21 │      111.   Defendants also utilized amounts known to the Defendants to be inaccurate to

22 │ determine the amount allegedly due and owing for purposes of foreclosure.

23 │      112.   Defendants' violations were all material in nature under the Truth-In-Lending Act.

24 │      113.   Said violations, in addition to the fact that Plaintiff did not properly receive Notices

25 │ of Right to Cancel, constitute violations of 15 USC sec. 1635(a) and (b) and 12 CFR sec.

26 │ 226.23(b), and are thus a legal basis for and legally extend Plaintiff's right to exercise the remedy

27 │ of rescission.

28 │      114.   Defendants assigned or attempted to assign the Note and mortgage to parties who

1  did not take these instruments in good faith or without notice that the instruments were invalid or

2  that Plaintiff had a claim in recoupment. Pursuant to ORC sec. 1303.32(A)(2)(b)(c) and (f),

3  Defendants are not a holder in due course and is thus liable to Plaintiff, individually, jointly and

4  severally.

5  115.   On information and belief and given that the consumer credit transaction was an

6  intertemporal transaction with multiple assignments as part of an aggregation and the creation of a

7  REMIC tranche itself a part of a predetermined and identifiable CMO, all Defendants shared in the

8  illegal proceeds of the transaction; conspired with each other to defraud the Plaintiff out of the

9  proceeds of the loan; acted in concert to wrongfully deprive the Plaintiff of his residence; acted in

10  concert and conspiracy to essentially steal the Plaintiff's home and/or convert the Plaintiff's home

11  without providing Plaintiff reasonably equivalent value in exchange; and conducted an illegal

12  enterprise within the meaning of the RICO statute.

13  116.   On information and belief and given the volume of residential loan transactions

14  solicited and processed by the Defendants, the Defendants have engaged in two or more instances

15  of racketeering activity involving different victims but utilizing the same method, means, mode,

16  operation, and enterprise with the same intended result.

17

18  ## CLAIMS FOR RELIEF

19

20  ### FIRST CAUSE OF ACTION:

21  ### VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT

22  117.   Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

23  fully set forth herein.

24  118.   In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA")

25  which is codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from

26  predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make

27  certain defined disclosures and prohibits certain terms from being included in home loans. In the

28  event of noncompliance, HOEPA imposes civil liability for rescission and statutory and actual

1 | damages.

2 | 119. Plaintiff is a "consumer" and each Defendant is a "creditor" as defined by HOEPA.

3 | In the mortgage loan transaction at issue here, Plaintiff was required to pay excessive fees,

4 | expenses, and costs which exceeded more than 10% of the amount financed.

5 | 120. Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendant is

6 | required to make certain disclosures to the Plaintiff which are to be made conspicuously and in

7 | writing no later than three (3) days prior to the closing.

8 | 121. In the transaction at issue, Defendants were required to make the following

9 | disclosure to Plaintiff by no later than three (3) days prior to said closing:

10 | "You are not required to complete this agreement merely because you have received these
disclosures or have signed a loan application. If you obtain this loan, the lender will have a
11 | mortgage on your home. You could lose your home and any money you have put into it, if
you do not meet your obligation under the loan."
12 |

13 | 122. Defendants violated HOEPA by numerous acts and material omissions, including

14 | but not limited to: (a) failing to make the foregoing disclosure in a conspicuous fashion; and (b)

15 | engaging in a pattern and practice of extending credit to Plaintiff without regard to his ability to

16 | repay in violation of 15 USC sec. 1639(h).

17 | 123. By virtue of the Defendants' multiple violations of HOEPA, Plaintiff had a legal

18 | right to rescind the consumer credit transaction the subject of this action pursuant to 15 USC sec.

19 | 1635. This Complaint is to be construed, for these purposes, as formal and public notice of

20 | Plaintiff's Notice of Rescission of the mortgage and note.

21 | 124. Defendants further violated HOEPA by failing to make additional disclosures,

22 | including but not limited to Plaintiff not receiving the required disclosure of the right to rescind

23 | the transaction;

24 | 125. The failure of Defendants to provide an accurate TIL disclosure; and the amount

25 | financed being understated.

26 | 126. As a direct consequence of and in connection with Plaintiff's legal and lawful

27 | exercise of his right of rescission, the true "lender" is required, within twenty (20) days of this

28 | Notice of Rescission, to: (a) desist from making any claims for finance charges in the transaction:

1  (b) return all monies paid by Plaintiff in connection with the transaction to the Plaintiff; and (c)

2  satisfy all security interests, including mortgages, which were acquired in the transaction.

3          127.   Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiff

4  shall tender all sums to which the true lender is entitled.

5          128.   Based on Defendants' HOEPA violations. each of the Defendants is liable to the

6  Plaintiff for the following, which Plaintiff demand as relief:

7          (a) rescission of the mortgage loan transactions;

8          (b) termination of the mortgage and security interest in the property the subject of

9          the mortgage loan documents created in the transaction;

10          (c) return of any money or property paid by the Plaintiff including all payments

11          made in connection with the transactions;

12          (d) an amount of money equal to twice the finance charge in connection with the

13          transactions;

14          (e) relinquishment of the right to retain any proceeds; and

15          (f) actual damages in an amount to be determined at trial, including any attorneys'

16          fees that may be incurred.

17

18  ## SECOND CAUSE OF ACTION:

19  ## VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT

20          129.   Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

21  fully set forth herein.

22          130.   As mortgage lenders, Defendants are subject to the provisions of the Real Estate

23  Settlement Procedures Act ("RESPA"). 12 USC sec. 2601 et seq.

24          131.   In violation of 12 USC sec. 2607 and in connection with the mortgage loan to

25  Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact

26  charges for other than services actually performed.

27          132.   As a result of the Defendants' violations of RESPA. Defendants are liable to

28  Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiff for

1   "settlement services" pursuant to 12 USC sec. 2607 (d)(2).

2

3                      **THIRD CAUSE OF ACTION:**

4          **VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT**

5        133.    Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

6   fully set forth herein.

7        134.    Defendants failed to include and disclose certain charges in the finance charge

8   shown on the TIL statement, which charges were imposed on Plaintiff incident to the extension of

9   credit to the Plaintiff and were required to be disclosed pursuant to 15 USC sec. 1605 and

10   Regulation Z.

11        135.    Sec. 226.4, thus resulting in an improper disclosure of finance charges in violation

12   of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d). Such undisclosed charges include a sum

13   identified on the Settlement Statement listing the amount financed which is different from the sum

14   listed on the NOTE.

15        136.    By calculating the annual percentage rate ("APR") based upon improperly

16   calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq.,

17   Regulation Z sec. 226.18(c), 18(d), and 22.

18        137.    Defendants' failure to provide the required disclosures provides Plaintiff with the

19   right to rescind the transaction, and Plaintiff, through this public Complaint which is intended to

20   be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind

21   the transaction.

22

23                      **FORTH CAUSE OF ACTION:**

24           **VIOLATION OF FAIR CREDIT REPORTING ACT**

25        138.    Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

26   fully set forth herein.

27        139.    At all times material, Defendants qualified as a provider of information to the

28   Credit Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion, under

1    the Federal Fair Credit Reporting Act.

2        140.    Defendants wrongfully, improperly, and illegally reported negative information as

3 to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative

4 information on their credit reports and the lowering of their FICO scores.

5        141.    The negative information included but was not limited to an excessive amount of

6 debt into which Plaintiff was tricked and deceived into signing.

7        142.    Notwithstanding the above, Plaintiff paid each and every payment due from the

8 time of the loan closing through the December 31, 2007, after which Defendant SAXON refused

9 to accept further payments.

10       143.    Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiff is entitled to maintain a private

11 cause of action against Defendants for an award of damages in an amount to be proven at the time

12 of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff,

13 including emotional distress and humiliation.

14       144.    Plaintiff is entitled to recover damages from Defendants for negligent non-

15 compliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(o).

16       145.    Plaintiff is also entitled to an award of punitive damages against Defendants for

17 their willful noncompliance with the Fair Credit Reporting Act pursuant to 15 USC sec.

18 1681(n)(a)(2) in an amount to be proven at time of trial.

19

20                          **FIFTH CAUSE OF ACTION:**

21                 **FRAUDULENT MISREPRESENTATION**

22       146.    Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

23 fully set forth herein.

24       147.    Defendants knowingly and intentionally concealed material information from

25 Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both

26 before and at the closing.

27       148.    Defendants also materially misrepresented material information to the Plaintiff with

28 full knowledge by Defendants that their affirmative representations were false, fraudulent, and

1    misrepresented the truth at the time said representations were made.

2        149.    Under the circumstances, the material omissions and material misrepresentations of

3    the Defendants were malicious.

4        150.    Plaintiff, not being an investment banker, securities dealer, mortgage lender,

5    mortgage broker, or mortgage lender, reasonably relied upon the representations of the Defendants

6    in agreeing to execute the mortgage loan documents.

7        151.    Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would

8    not have entered into the transactions the subject of this action.

9        152.    As a direct and proximate cause of the Defendants' material omissions and material

10   misrepresentations, Plaintiff has suffered damages.

11

12                            **SIXTH CAUSE OF ACTION:**

13                            **BREACH OF FIDUCIARY DUTY**

14       153.    Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

15   fully set forth herein.

16       154.    Defendants, by their actions in contracting to provide mortgage loan services and a

17   loan program to Plaintiff which was not only to be best suited to the Plaintiff given their income

18   and expenses but by which Plaintiff would also be able to satisfy his obligations without risk of

19   losing his home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially

20   given that Plaintiff was not, and is not, an investment banker, securities dealer, mortgage lender,

21   mortgage broker, or mortgage lender.

22       155.    Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing

23   Plaintiff to enter into a mortgage transaction which was contrary to the Plaintiff's stated

24   intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of his

25   home.

26       156.    As a direct and proximate result of the Defendants' breaches of their fiduciary

27   duties, Plaintiff has suffered damages.

28       157.    Under the totality of the circumstances, the Defendants' actions were willful.

1    wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiff
2    justifying an award of not only actual compensatory but also exemplary punitive damages to serve
3    as a deterrent not only as to future conduct of the named Defendants herein, but also to other
4    persons or entities with similar inclinations.

5

6                        **SEVENTH CAUSE OF ACTIOM:**
7                              **UNJUST ENRICHMENT**

8       158.   Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again
9    fully set forth herein.

10      159.   Defendants had an implied contract with the Plaintiff to ensure that Plaintiff
11   understood all fees which would be paid to the Defendants to obtain credit on Plaintiff's behalf
12   and to not charge any fees which were not related to the settlement of the loan and without full
13   disclosure to Plaintiff.

14      160.   Defendants cannot, in good conscience and equity, retain the benefits from their
15   actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not
16   limited to from resale of mortgages and notes using Plaintiff's identity, credit score and reputation
17   without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and
18   YSP fee unrelated to the settlement services provided at closing.

19      161.   Defendants have been unjustly enriched at the expense of the Plaintiff, and
20   maintenance of the enrichment would be contrary to the rules and principles of equity.

21      162.   Defendants have also been additionally enriched through the receipt of PAYMENT
22   from third parties including but not limited to investors, insurers, other borrowers, the United
23   States Department of the Treasury, the United States Federal Reserve, and Bank of America, N.A.

24      163.   Plaintiff thus demands restitution from the Defendants in the form of actual
25   damages, exemplary damages, and attorneys' fees.

26   / / /
27   / / /
28   / / /

## EIGHTH CAUSE OF ACTION:

### CIVIL CONSPIRACY

164. Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again fully set forth herein.

165. In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

166. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff.

167. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiff.

168. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages.

169. Plaintiff thus demands an award of actual, compensatory, and punitive damages.

## NINETH CAUSE OF ACTION:

### CIVIL RICO

170. Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again fully set forth herein.

171. Defendants are "persons" as defined by ORC sec. 2923.31(G).

172. The conspiracy, the subject of this action, has existed from date of application to the present, with the injuries and damages resulting therefrom being continuing.

173. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the

1  Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of

2  fraudulent loan documents.

3     174.    Each of the Defendants is an "enterprise Defendant".

4     175.    As a direct and proximate result of the actions of the Defendants, Plaintiff has and

5  continues to suffer damages.

6

7                          **TENTH CAUSE OF ACTION:**

8                     **QUIET TITLE TO REAL PROPERTY**

9     176.    Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again

10  fully set forth herein.

11    177.    Plaintiff has sent or has caused to be sent authorized Qualified Written Requests to

12  the only known Defendants which the said Defendants have failed and refused to answer.

13    178.    Plaintiff has sent or has caused to be sent notice of his intent to modify or rescind

14  the subject loan transaction but has only sent those notices to the only entities that have been

15  disclosed. Hence, without this action, neither the rescission nor the reconveyance which the

16  Plaintiff is entitled to file (as attorney in fact for the originating lender) and will file

17  contemporaneously with this complaint, gives Plaintiff full and clear title to the property.

18    179.    The real party in interest on the lender side may be the owner of the asset backed

19  security issued by the SPV, the insurer through some claim of equitable interest, or the Federal

20  government through the United States Department of the Treasury or the Federal Reserve. The

21  security is a "securitized" bond deriving its value from the underlying mortgages of which the

22  subject mortgage is one. Thus Plaintiff is entitled to quiet title against Defendants, clearing title of

23  the purported subject mortgage encumbrance.

24    180.    Plaintiff therefore seeks a declaration that the title to the subject property is vested

25  in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate,

26  right, title or interest in the subject property and that said Defendants and each of them, be forever

27  enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff

28  herein.

## ELEVENTH CAUSE OF ACTION:

## USURY AND FRAUD

181.   Plaintiff reaffirms and realleges paragraphs 1-116 hereinabove as if they were again fully set forth herein.

182   Plaintiff is informed and believes and thereon alleges that, the subject loan, note, and mortgage was structured so as to create the appearance of a higher value of the real property than the actual fair market value.

183.   Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendants sued herein was the agent and employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and employment.

184.   Defendants disguised the transaction to create the appearance of the lender being a properly chartered and registered financial institution authorized to do business and to enter into the subject transaction when in fact the real party in interest was not disclosed to Plaintiff, as aforesaid, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme.

185.   Said real party in interest, i.e., the source of funding for the loan and the person to whom the note was transmitted or eventually "assigned" was neither a financial institution nor an entity or person authorized, chartered or registered to do business in this State nor to act as banking, lending or other financial institution anywhere else.

186.   As such, this fraudulent scheme, (which was in actuality a plan to trick the Plaintiff into signing what would become a negotiable security used to sell unregulated securities under fraudulent and changed terms from the original note) was in fact a sham to use Plaintiff's interest in the real property to collect interest in excess of the legal rate.

187.   The transaction involved a loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law. The "formula rate" referenced in those laws was exceeded by a factor in excess of 10 contrary to the applicable law and contrary to the requirements for disclosure under TILA and HOEPA.

188.     Under Applicable law, the interest charged on this usurious mortgage prevents any collection or enforcement of principal or interest of the note, voids any security interest thereon, and entitles the Plaintiff to recovery of all money or value paid to Defendants, plus treble damages, interest, and attorney fees.

189.     Under Applicable Law, Plaintiff is also entitled and demand a permanent injunction be entered against the Defendants (a) preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious, as aforesaid (b) requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record, (c) allowing the filing of said order in the office of the clerk of the property records where the subject property, "Loan transaction" and any other documents relating to this transaction are located and (d) dissolving any lis pendens or notice of pendency relating to the Defendants' purported claim.

**RELIEF SOUGHT**

WHEREFORE, having set forth numerous legally sufficient causes of actions against the Defendants, Plaintiff prays for the entry of Final Judgment against all Defendants jointly and severally as herein prayed for under each cause of action or otherwise as herein set forth; that the Court find that the transactions the subject of this action are illegal and are deemed void; and that the foreclosure which was instituted be deemed and declared illegal and void and that further proceedings in connection with the foreclosure be enjoined.

ACCORDINGLY, Plaintiff prays this Court will enter judgment against defendants and each of them, as follows:

A.     For an order restraining Defendants, and each of them, from proceeding with any foreclosure proceeding relating to the PROPERTY during the pendency of this action without express order of this Court;

B.     For an order compelling said Defendants, and each of them, to transfer or release legal title and alleged encumbrances thereon and possession of the subject property to Plaintiff herein;

1    C.    For a declaration and determination that Plaintiff is the rightful holder of title to the

2  PROPERTY and that the Defendants herein, and each of them. be declared to have no estate. right,

3  title or interest in said property;

4    D.    For a judgment forever enjoining said Defendants. and each of them, from claiming

5  any estate, right, title or interest in the subject property;

6    E.    For damages in an amount, or amounts, not yet quantified but to be proven at trial

7  and for such other amounts to be proven at trial;

8    F.    For costs of suit herein incurred;

9    G.    For such other and further relief as the court may deem just and proper

10

11                          **DEMAND FOR JURY TRIAL**

12        Plaintiff demands as a matter of right trial by jury of all matters so triable.

13

14

15

16  Respectfully Submitted,

17

18

19

20  George F. Rombach, Plaintiff
    252 West Soaring Avenue
21  Prescott, AZ 86301
    949-500-1850   telephone
22  949-266-8542   facsimile

23

24

25

26

27

28

**VERIFICATION**

I, George F. Rombach, am the Plaintiff in the above-entitled action. I have read the foregoing and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury pursuant to the laws United States and the State of Arizona that the foregoing is true and correct.

This declaration was executed on the Tenth day of February 2009 at Prescott Arizona.

George F. Rombach

2

1    GEORGE F. X. ROMBACH

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2    389 West Rosser
     Prescott, Arizona 86301 (mailing address)

2009 FEB 10 PM 1: 07

3

JEANNE HICKS, CLERK

4    (949) 500-1850 (telephone)
     (949) 266-8542 (facsimile)

S Smisko

BY:_____

5

6    Defendant, In Pro Per

7

8           **SUPERIOR COURT OF THE STATE OF ARIZOIA**

9              **FOR THE COUNTY OF YAVAPAI**

10

11    GEORGE F. ROMBACH, an individual,      )    Case No. CV 2 0 0 9   -   3

12            Plaintiff,                )

13         vs.                        )    **APPLICATION FOR**

14    SAXON MORTGAGE, INC., a corporation;   )   **TEMPORARY RESTRAINING ORDER**
     DEUTSCHE BANK TRUST COMPANY       )               **AND**

15    AMERICAS, a business entity of unknown   )   **ORDER TO SHOW CAUSE RE:**
     form; FIDELITY NATIONAL TITLE, a     )     **PRELIMINARY INJUNCTION**

16    business entity of unknown form;        )
     MICHAEL A. BOSCO, JR., an individual;    )

17    DOES 1 through 100 inclusive; and       )
     DOES 101 through 1000 inclusive,      )

18                                )

19           Defendants.             )

20

21

22        Plaintiff, George F. Rombach, hereby applies for a temporary restraining order restraining

23    Defendants,    SAXON   MORTGAGE,   INC.,    SAXON   MORTGAGE   SERVICES,   INC.,

24    DEUTSCHE BANK TRUST COMPANY AMERICAS INC., MICHAEL A. BOSCO, JR., and

25    their agents and employees from conducting any public or private foreclosure sale of or entering

26    onto the property owned by Plaintiff, George F. Rombach, located at 252 West Soaring Avenue.

27    Prescott, Arizona 86301-2130. and an order requiring Defendants to show cause why a

28    preliminary injunction should not issue to restrain defendant and their agents and employees from

1  conducting any public or private foreclosure sale of or entering onto the property while this action

2  is pending. This application is based on the grounds that Defendants have sought and continues to

3  seek to conduct a foreclosure sale of the property which is presently set for February 12, 2009 on

4  the steps of this Courthouse, and that great and irreparable injury would result to Plaintiff before

5  the matter can be heard on notice, as shown by the declaration of George F. Rombach attached to

6  this application.

7        This application is based on the declaration of George F. Rombach, and the memorandum

8  of points and authorities filed concurrently.

9

10  Dated:  February 10, 2009.

11

12

13

14  George F. Rombach, Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

**AUTHORITY OF THE COURT:**  The Court has inherent authority under both law and equity to enter the orders sought by this application.

**GREAT AND IRREPARABLE HARM:**  As established in the attached declaration of George F. Rombach and the Verified Complaint on file in this action and incorporated herein by this reference great and irreparable injury would result to Plaintiff if Defendants are allowed to conduct the foreclosure sale of the PROPERTY presently scheduled for February 12, 2009 on the steps of this Courthouse.  If that foreclosure sale is allowed to proceed this Court will not have the authority to restore Plaintiff to his per action position in that the PROPERTY is unique and of particular meaning to Plaintiff, which can not be served or replaced with another property.

**VALID ISSUES TO BE TRIED:**  As established in the attached declaration of George F. Rombach and the Verified Complaint on file in this action and incorporated herein by this reference Plaintiff has numerous causes of action that are entitled to their day in court.

**PREDITORY LENDING PRACTICES:**  As established in the attached declaration of George F. Rombach and the Verified Complaint on file in this action and incorporated herein SAXON has not acted in good faith in its predatory practices in the soliciting Plaintiff to execute the NOTE, the closing and recording of the loan and its conduct of the foreclosure.

**PRIOR ATTEMPTS TO SETTLE:** As established in the attached declaration of George F. Rombach and the Verified Complaint on file in this action and incorporated herein Plaintiff has made extensive attempts to settle his disputes with Defendant Saxon Mortgage, Inc., et. al (hereinafter "SAXON") over the last two (2) years however SAXON has failed and refused to even acknowledge these communications let alone enter into any meaningful negotiations.

## DECLARATION OF GEORGE ROMBACH

I, George Rombach, declare and state as follows:

1.     I make this declaration in support of the application for a temporary restraining order and an order requiring Defendants to show cause why a preliminary injunction should not issue to restrain defendant and their agents and employees from conducting any public or private foreclosure sale of the property which is my dwelling place.

2.     If called as a witness in any proceeding I could and would competently testify to all matters set forth in this declaration.

3.     I am a resident of the City of Prescott, County of Yavapai in the State of Arizona.

4.     I own the property located at 252 West Soaring Avenue, Prescott AZ, which I utilize as my primary dwelling place (hereinafter referred to as the "PROPERTY")

5.     When I sought to refinance the property in early 2005, sought a loan with fixed interest rate.

6.     Defendant Saxon Mortgage, Inc. (hereinafter referred to as "SAXON") approved my application, but offered a lower rate if I would accept a loan that had a fixed rate of interest for an short initial period variable interest rate and thereafter the interest rate would adjust periodically based on an index value plus a margin..

7.     SAXON represented that the interest rate adjustment formula was designed to reflect an interest rate that approximated the then market rate of interest.

8.     SAXON represented that the only risk that I would have would be general market for mortgage interest rates, which a risk I was willing to accept.

9.     SAXON further represented that it would upon request modify the loan to their prevailing fixed interest rate.

10.     I relied upon the representations of SAXON in executing the NOTE and TRUST DEED which are the subject of this action.

11.     In mid 2007 it became apparent that the interest rate adjustment did **NOT** work as SAXON had represented that it would.

12.     I began to attempt to renegotiate the NOTE to SAXON's then prevailing fixed

1  interest rate, however SAXON has failed and refused to even acknowledge these communications

2  let alone enter into any meaningful negotiations.

3       13.    By January 1, 2008, the interest had nearly doubled to 10.875%, which rate was

4  approximately twice the then market rate for interest.

5       14.    The increased interest rate caused the montly payment to nearly double to four

6  thousand, three hundred, twenty-two dollars and eighty-one cents ($4,322.81).

7       15.    In November 2007, I formally proposed a loan modification in writing that

8  provided the deferral of the increased portion of the payments. I have in writing repeated such

9  proposal, as well as variation thereof on numerous occasions to all of the representatives of

10 SAXON that I could identify on the internet. I also voluntarily provided financial information.

11 However, each of SAXON representatives failed and refused to even acknowledge these

12 communications let alone enter into any meaningful negotiations to resolve the matter.

13      16.    I attempted to make the January 1, 2008, February 1, 2008, March 1, 2008 and

14 April 1, 2008 payments at the previous payment amount, but SAXON rejected and refused each of

15 those payments.

16      17.    On April 25, 2008 SAXON recorded a "Substitution of Trustee" and a "Notice of

17 Trustee's Sale". The Notice of Trustee's Sale provided that the PROPERTY would be sold by

18 public auction on July 25, 2008 at 11:00 a.m. on the front steps of the Old Yavapai County

19 Courthouse. I did **NOT** receive notice of either of those documents or actions at or about the date

20 that they were recorded.

21      18.    I did receive a copy of the "Notice of Trustee's Sale" during the Fourth of July

22 holiday weekend when it was posted on the front door of the PROPERTY.

23      19.    At no time between January and July 2008 did SAXON disclose that they had to

24 PROPERTY in foreclosure.

25      20.    To protect the PROPERTY from foreclosure, on July 18, 2008 ROMBACH filed a

26 Petition under Chapter 7 of the United States Bankruptcy Code with the United States Bankruptcy

27 Court, District of Arizona, Case No. 08-08962. That case is now complete and the automatic stay

28 has been lifted effective February 10, 2008.

1       21.     During the Bankruptcy proceedings, SAXON sought relief from the automatic stay

2   which the Bankruptcy Court denied until the conclusion of the case at which time it would have

3   automatically been lifted by operation of law.

4       22.     Part of the reason for using Bankruptcy protection, in addition to its speed and my

5   general familiarity with it, was that there was extensive expectation that as part of  Congress

6   would modify the United State Bankruptcy Code to allow Bankruptcy Judges the authority to re-

7   write first trust deed note in the same or similar manner that they currently have the authority to

8   re-write second, third etc. trust deed notes.

9       23.     That expectation was based in part on the fact that in July 2008, the U.S. House of

10  Representatives and Senate both passed *The Foreclosure Prevention Act of 2008; HR 3221*, which

11  was signed into law by the President of the United States shortly thereafter.  While that act did not

12  provide for mandatory participation by lenders it certainly lead to the expectation that the Federal

13  government was going to provide relief to victims of the sub-prime mortgage crisis.

14      24.     Notwithstanding all of the political hoopla to the contrary, the expected relief has

15  not materialized.

16      24.     During the bankruptcy proceeds, the Bankruptcy Judge directed the attorney for

17  SAXON to provide me with contact information of a SAXON representative with the authority to

18  enter into such negotiations.  I never received that information from the attorney for SAXON and

19  SAXON has continued to refuse to enter into any meaningful negotiations to resolve the matter.

20      25.     In that the expected relief did not materialize, the Bankruptcy Judge also

21  recommended that I explore other non-bankruptcy remedies that there might be available.

22      26.     I took that advise to heart and began to explore and research available alternatives,

23  which has resulted in filing the Verified Complaint in this action.

24      27.     I prepared and read the Verified Complaint and know the contents thereof. The

25  allegation contained therein is true of my own knowledge, except as to those matters which are

26  therein alleged on information and belief, and as to those matters, I believe it to be true.  The

27  Verified Complaint on file in this action is incorporated herein by this reference as if it had been

28  fully set forth herein.

-3-

28.     As set forth in the Verified Complaint the PROPERTY has a unique and irreplaceable value and meaning to me.

I declare under penalty of perjury pursuant to the laws of the State of Arizona, and the United States of America that the foregoing is true and correct.

This 10th day of February, 2009.

George Rombach

3

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 10 PM 1:05

JEANNE HICKS, CLERK

BY _____ S. Smiske

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF YAVAPAI**

| | | |
|---|---|---|
| Plaintiff *GEORGE ROMBACH* | | Case Number CV 2 0 0 9 - |
| vs | | **CERTIFICATE ON COMPULSORY ARBITRATION** |
| Defendant *SAXON MORTGAGE* | | [ ]   CONTROVERTING  [218] |

The undersigned certifies that the largest award sought by the Complainant(s), including punitive damages, but excluding interest, attorney's fees and costs,

[X]   **EXCEEDS** the $ 65,000.00 limit set by Yavapai County Local Rule 10.3.  This case **IS NOT SUBJECT** to the Uniform Rules of Procedure for Arbitration.  **[217]**

[ ]   **DOES NOT EXCEED** the $65,000.00 limit set by Yavapai County Local Rule 10.3.  This case **IS SUBJECT** to the Uniform Rules of Procedure for Arbitration.  **[216]**

**RESPECTFULLY SUBMITTED** this *10th* day of *February*, 20 *09*.

_____
Plaintiff / Defendant

F:/Clerks/Forms/Free Forms/Certificate on Compulsory Arbitration (2/7/08)

4

Name: *George Rombach*
Mailing Address: *389 W. Rosser St.*
  *Prescott, AZ, 86301*
Daytime Telephone *(949) 500-1850*
Representing Self, Without a Lawyer

### IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*George F. Rombach*
_____
Plaintiff

CV: *2 0 0 9 0 1 5 3*

and

*Saxon Mortgage Inc. et al*
_____
Defendant

**SUMMONS**

**[223]**

> **WARNING: THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.**

FROM THE STATE OF ARIZONA TO *Saxon Mortgage Inc.*  .
(Name of Defendant)

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2.  If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3.  If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

    **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4.  Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Thrusko*  _____ Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *GEORGE ROMBACIT*

Mailing Address: *389 W. ROSSER ST.*

*PRESCOTT, AZ, 86301*

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*GEORGE F. ROMBACIT*
Plaintiff

and

*SAXON MORTGAGE INC. Al*
Defendant

CV _20090 1 3_

**SUMMONS**

**[223]**

┌─────────────────────────────────────────────────────────────────────────┐
│ **WARNING: THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.** │
│ **READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.** │
└─────────────────────────────────────────────────────────────────────────┘

FROM THE STATE OF ARIZONA TO *Saxon Mortgage Services Inc.*

(Name of Defendant)

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2. If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3. If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

   **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4. Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Kmiesko* _____ Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *GEORGE ROMBACH*

Mailing Address: *389 W. ROSSER ST.*

_*PRESCOTT AZ, 86301*_

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*GEORGE F. ROMBACH*

Plaintiff

and

*SAXON MORTGAGE INC. et al*

Defendant

CV *2 0 0 8 0* _ _

**SUMMONS**

**[223]**

---

**WARNING:** THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.
READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.

---

FROM THE STATE OF ARIZONA TO *MICHAEL A. BOSCO, JR.*   .

(Name of Defendant)

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2.  If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3.  If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

    **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4.  Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *FEB. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Tnisko*   Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name. *GEORGE RUMBA...*

Mailing Address: *389 W. ROSSER ST.*

*PRESCOTT, AZ, 86301*

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*GEORGE F. ROMBACH*
Plaintiff

and

*SAXON MORTGAGE INC. ...*
Defendant

CV *2 0 0 0 0 ... 3*

**SUMMONS**

**[223]**

| **WARNING: THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.** |
| --- |

FROM THE STATE OF ARIZONA TO *DEUTSCHE BANK TRUST COMPANY AMERICAS*
(Name of Defendant)

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2.  If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3.  If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the day you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

    **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4.  Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb 10 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Louise* _____ Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *George Rombach*

Mailing Address: *389 W. Rosser St.*

*Prescott, Az, 86301*

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*George F. Rombach*
Plaintiff

and

*Saxon Mortgage Inc. et al*
Defendant

CV *20 00 0*

**SUMMONS**

[223]

| WARNING: THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP. |
| --- |

FROM THE STATE OF ARIZONA TO *Fidelity National Title Agency, Inc.*

(Name of Defendant)

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2. If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3. If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

   **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4. Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By _____ Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *GEORGE ROMBAC*

Mailing Address: *389 W. ROSSER ST.*

*PRESCOTT, AZ, 86301*

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

### IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*GEORGE F. ROMBACH*

Plaintiff

and

*SAXON MORTGAGE INC. Pd*

Defendant

CV *2009013*

**SUMMONS**

[223]

---

> **WARNING: THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.**

---

FROM THE STATE OF ARIZONA TO *SAXON MORTGAGE INC.*  .

(Name of Defendant)

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2. If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3. If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

   **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4. Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *FEB. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Twisko*  Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: _GEORGE ROMBAC_

Mailing Address: _389 W. ROSSER ST._

_PRESCOTT, AZ, 86301_

Daytime Telephone _(949) 500-1850_

Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

CV _2 0 0 9 0 1 0 3_

_GEORGE F. ROMBACH_

Plaintiff

and

**SUMMONS**

[223]

_SAXON MORTGAGE INC. et al_

Defendant

| **WARNING:** THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP. |
|---|

FROM THE STATE OF ARIZONA TO _Saxon Mortgage Services, Inc._

(Name of Defendant)

1.   A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2.   If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3.   If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

  **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4.   Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: _Feb. 10, 2009_

JEANNE HICKS, Clerk of the Superior Court

By _Stephanie Kmiecko_ Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *GEORGE ROMBAC*

Mailing Address: *389 W. ROSSER ST.*

*PRESCOTT, AZ, 86301*

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*GEORGE F. ROMBACH*
Plaintiff

and

*SAXON MORTGAGE INC. et al*
Defendant

cv *2 0 0 8 0 1 1 3*

**SUMMONS**

**[223]**

> **WARNING:** THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.
> READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.

FROM THE STATE OF ARIZONA TO *DEUTSCHE BANK TRUST COMPANY AMERICAS*
(Name of Defendant)

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2.  If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3.  If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

    **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4.  Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb 10 2009*

JEANNE HICKS, Clerk of the Superior Court

By _____  Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *George Rombac*
Mailing Address: *389 W. Rosser St.*
*Prescott, AZ, 86301*
Daytime Telephone *(949) 500-1850*
Representing Self, Without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

*George F. Rombach*
Plaintiff

and

*Saxon Mortgage Inc. et al*
Defendant

CV*2 0 0 8 0* _ _ _

**SUMMONS**

[223]

| **WARNING:** THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP. |
| --- |

FROM THE STATE OF ARIZONA TO *Michael A. Bosco, Jr,* ____.
(Name of Defendant)

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2.  If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3.  If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

    **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4.  Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Zmiska*          Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

Name: *GEORGE ROMBAC*

Mailing Address: *389 W. ROSSER ST.*

*PRESCOTT, AZ, 86301*

Daytime Telephone *(949) 500-1850*

Representing Self, Without a Lawyer

### IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

CV *200 C A* 

*GEORGE F. ROMBACH*

Plaintiff

and .

**SUMMONS**

**[223]**

*SAXON MORTGAGE INC. et al*

Defendant

---

**WARNING:** THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.

---

FROM THE STATE OF ARIZONA TO *FIDELITY NATIONAL TITLE* .

(Name of Defendant)

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2. If you do not want a judgment or order taken against you without your input, you must file an answer with the Court, and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, Yavapai County Courthouse, 120 S Cortez, Prescott AZ 86303 or Clerk of Superior Court, 3505 W Hwy 260, Ste 102, Camp Verde AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3. If this Summons and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after the date of the first publication.

   **NOTICE. If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4. Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons, or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: *Feb. 10, 2009*

JEANNE HICKS, Clerk of the Superior Court

By *Stephanie Chmielko* _____ Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

5

1

GEORGE F. X. ROMBACH

2

389 West Rosser
Prescott, Arizona 86301 (mailing address)

3

(949) 500-1850   (telephone)
(949) 266-8542   (facsimile)

4

5

Defendant, In Pro Per

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF YAVAPAI

9

10

GEORGE F. ROMBACH, an individual,

Plaintiff,

vs.

SAXON MORTGAGE, INC., a corporation;
DEUTSCHE BANK TRUST COMPANY
AMERICAS, a business entity of unknown
form; FIDELITY NATIONAL TITLE, a
business entity of unknown form; MICHAEL A.
BOSCO, JR., an individual; DOES 1 through
100 inclusive; and DOES 101 through 1000
inclusive,

Defendants.

11

12

13

14

15

16

17

18

Case No.:  CV 20090183

(PROPOSED)

TEMPORARY RESTRAINING ORDER
AND
ORDER TO SHOW CAUSE RE:
PRELIMINARY INJUNCTION

19

20

Plaintiff has filed a verified Complaint, Application for Temporary Restraining

21

Order and Order to Show Cause Regarding Preliminary Injunction, and Declaration of

22

Plaintiff in support thereof, which the Court has read and reviewed.  The Court finds that

23

it clearly appears from the specific facts set forth in the pleadings that Plaintiff will suffer

24

immediate and irreparable injury unless Defendants are restrained by an order of this

25

Court issued without advance notice.

Temporary Restraining Order and Order to Show Cause

Plaintiff seeks to restrain the named Defendants from proceeding to trustee's sale of a specific parcel of real property owned by Plaintiff and used by him as his residence. The loss of ownership interest in a unique and specific parcel of real property which is the primary residence of Plaintiff is the specific immediate and irreparable injury enjoined by this order. Advance notice to Defendants is not required as the matters submitted by Plaintiff establish that trustee's sale will proceed February 12, 2009 unless enjoined.

**NOW THEREFORE IT IS ORDERED** Defendants SAXON MORTGAGE, INC., SAXON MORTGAGE SERVICES, INC., DEUTSCHE BANK TRUST COMPANY AMERICAS INC., MICHAEL A. BOSCO, JR., and their agents and employees are temporarily restrained from proceeding to a trustee's sale of the residence and real property located at "252 West Soaring Avenue, Prescott, Arizona 86301-2130 legally described as "Lot 61, REPLAT OF EAGLE RIDGE, according to the plat of record in Book 28, Page 95, Records of Yavapai County, Arizona" and identified as "Tax Parcel No.: 105-08-067A".

**IT IS FURTHER ORDERED** the Defendants shall appear and show cause why a preliminary injunction should not issue on **Thursday, February 26, 2009 at 1:30 p.m.** in Division 4, Courtroom 204. *One hour is allotted.*

This Preliminary Injunction shall issue upon the giving of security by the Plaintiff in the sum of $2,750.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained pursuant to Arizona Rules of Civil Procedure Rule 65(e).

_Feby 11. 2009_
Date

_Howard D. Hinson, Jr._
Hon. Howard D. Hinson, Jr.
Superior Court Judge, Division 4

6

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12  PM 3: 2<sup></sup>

JEANNE HICKS, CLERK

**Beth Blanton**

BY:_____

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                    CASE NO. CV20090183
         VS                          JUDGE  HOWARD HINSON
SAXON MORTGAGE, INC. ET AL.,         HEARING DATE: 02/26/09 @ 1:30 pm

STATE OF ARIZONA                )    AFFIDAVIT OF SERVICE
MARICOPA COUNTY                 )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/12/09 I received the TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
MICHAEL A. BOSCO JR., AN INDIVIDUAL on 02/12/09 at 10:25 am at 2525 E. CAMELBACK
RD., #300 PHOENIX, AZ 85016 MARICOPA COUNTY in the manner shown below:

in person.

Description: CAUC, Male, Approx. 70 yrs. of age, 5' 6" tall, Weighing 160lbs., GREY
Hair,

DON A. FOUTZ, ACPS                    Affiant
Sworn to before me the    Feb 12, 2009

JoAnn Florez                          Notary

My Commission expires:  02/25/2010

| | | |
|---|---|---|
| SERVICE OF PROCESS | $ | 16.00 |
| MILES            8 | $ | 19.20 |
| RUSH | $ | 35.00 |
| SERVICE CHARGE | $ | 5.00 |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 |
| TOTAL | $ | 85.20 |

1544087 18270
ORIGINAL

‖‖‖‖‖‖‖‖‖‖‖‖
AX021544087



OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12   PM 3: 24 ✓

JEANNE HICKS, CLERK

BY: __Beth Blanton__

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                         CASE NO. CV20090183
        VS                                JUDGE  HINSON
SAXON MORTGAGE, INC. ET. AL.,

STATE OF ARIZONA                    )     AFFIDAVIT OF SERVICE
MARICOPA COUNTY                     )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/11/09 I received the SUMMONS;
VERIFIED COMPLAINT FOR VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT, REAL
ESTATE SETTLEMENT PROCEDURES ACT, FEDERAL TRUTH-IN-LENDING ACT, & FAIR CREDIT
REPORTING ACT; FRAUDULENT MISREPRESENTATION; BREACH OF FIDUCIARY DUTY;  UNJUST
ENRICHMENT;  CIVIL CONSPIRACY;  CIVIL RICO;  QUIET TITLE TO REAL PROPERTY;  USURY;
AND FRAUD;  CERTIFICATE ON COMPULSORY ARBITRATION;  APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION;  PROPOSED
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRLIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
SAXON MORTGAGE, INC., BY SERVICE UPON ITS STATUTORY AGENT, PRENTICE-HALL CORP
SYSTEM on 02/11/09 at 3:26 pm at 2338 W. ROYAL PALM RD., Ste. J PHOENIX, AZ 85021
MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with ASHLEY MCAULIFFE, CLERK,
STATED AUTHORIZED TO ACCEPT.

Description: CAUC, Female, Approx. 35 yrs. of age, 5' 7" tall, Weighing 300lbs.,
BLUE Eyes, BROWN Hair,

CHAD BARBER, ACPS                         Affiant
Sworn to before me the    Feb 12, 2009

JoAnn Florez                             Notary

My Commission expires:  02/25/2010

| | | |
|---|---|---|
| SERVICE OF PROCESS | $ | 16.00 |
| MILES          11 | $ | 26.40 |
| SERVICE CHARGE | $ | 5.00 |
| RUSH | $ | 15.00 |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 |
| TOTAL | $ | 72.40 |

1543548 18270          AX021543548
ORIGINAL



OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12  PM 3: 2 ✓

JEANNE HICKS, CLERK

BY: Beth Blanton

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                        CASE NO. CV20090183
            VS                           JUDGE HINSON
SAXON MORTGAGE, INC. ET. AL.,

STATE OF ARIZONA                    )     AFFIDAVIT OF SERVICE
MARICOPA COUNTY                     )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/11/09 I received the SUMMONS;
VERIFIED COMPLAINT FOR VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT, REAL
ESTATE SETTLEMENT PROCEDURES ACT, FEDERAL TRUTH-IN-LENDING ACT, & FAIR CREDIT
REPORTING ACT; FRAUDULENT MISPREPRESENTATION; BREACH OF FIDUCIARY DUTY;  UNJUST
ENRICHMENT;  CIVIL CONSPIRACY;  CIVIL RICO;  QUIET TITLE TO REAL PROPERTY;  USURY;
AND FRAUD;   CERTIFICATE ON COMPULSORY ARBITRATION;    APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION;   PROPOSED
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRLIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
SAXON MORTGAGE SERVICES, INC., BY SERVICE UPON ITS STATUTORY AGENT, CORPORATION
SERVICE COMPANY on 02/11/09 at 3:26 pm at 2338 W. ROYAL PALM RD., Ste. J PHOENIX,
AZ 85021 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with ASHLEY MCAULIFFE, CLERK,
STATED AUTHORIZED TO ACCEPT.

Description: CAUC, Female, Approx. 35 yrs. of age, 5' 7" tall, Weighing 300lbs.,
BLUE Eyes, BROWN Hair,

CHAD BARBER, ACPS                         Affiant
Sworn to before me the   Feb 12, 2009

JoAnn Florez                              Notary

My Commission expires:  02/25/2010

| | | |
|---|---|---|
| SERVICE OF PROCESS | $ | 16.00 |
| SERVICE CHARGE | $ | 5.00 |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 |
| TOTAL | $ | 31.00 |

1543547 18270          AX021543547
ORIGINAL

OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12  PM 3: 2⸱ ✓

JEANNE HICKS, CLERK

BY: Beth Blanton
_____

HAWKINS and E-Z MESSENGER
101 E. Gurley Street  Suite A
Prescott, AZ 86301
(928) 443-5440  FAX: (928) 443-5442

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                    CASE NO. CV20090183
        VS                           JUDGE  HOWARD HINSON
SAXON MORTGAGE, INC. ET AL.,         HEARING DATE: 02/26/09 @ 1:30 pm

STATE OF ARIZONA          )          AFFIDAVIT OF SERVICE
YAVAPAI COUNTY            )
THE AFFIANT, being sworn, states: That I am a private process server registered in
YAVAPAI COUNTY and an Officer of the Court.  On 02/12/09 I received the TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
NOTICE OF TRUSTEES SALES CALLER (MICHAEL HOLEVAR) on 02/12/09 at 11:00 am at 120 S.
Cortez Street County Courthouse Steps(North) PRESCOTT, AZ 86301 YAVAPAI COUNTY in
the manner shown below:

in person.

Description: WHITE, Male, Approx. 38 yrs. of age, 5' 10" tall, Weighing 220lbs.,
BROWN Eyes, BALD Hair,

---

**OFFICIAL SEAL**
**YAH JACOBSEN**
NOTARY PUBLIC-ARIZONA
YAVAPAI COUNTY
My Comm. Exp. Dec. 9, 2011

DOUGLAS E HASTINGS, ACPS            Affiant
Sworn to before me the  Feb 12, 2009

Yah Jacobsen                        Notary

My Commission expires: 12/09/2011

| | | | |
|---|---|---|---|
| SERVICE OF PROCESS | $ | 16.00 | |
| MILES | 1 $ | 16.00 | |
| SERVICE CHARGE | $ | 5.00 | |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 | |
| TOTAL | $ | 47.00 | |

1544088 18270
ORIGINAL

AX021544088

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12 PM 3: 23 ✓

JEANNE HICKS, CLERK

BY: Beth Blanton

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                          CASE NO. CV20090183
        VS                                 JUDGE  HINSON
SAXON MORTGAGE, INC. ET. AL.,

STATE OF ARIZONA          )                AFFIDAVIT OF SERVICE
MARICOPA COUNTY           )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/11/09 I received the SUMMONS;
VERIFIED COMPLAINT FOR VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT, REAL
ESTATE SETTLEMENT PROCEDURES ACT, FEDERAL TRUTH-IN-LENDING ACT, & FAIR CREDIT
REPORTING ACT; FRAUDULENT MISREPRESENTATION; BREACH OF FIDUCIARY DUTY;  UNJUST
ENRICHMENT;  CIVIL CONSPIRACY;  CIVIL RICO;  QUIET TITLE TO REAL PROPERTY;  USURY;
AND FRAUD;   CERTIFICATE ON COMPULSORY ARBITRATION;    APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION;   PROPOSED
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRLIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
MICHAEL A. BOSCO, JR. on 02/11/09 at 3:25 pm at 2525 E. CAMELBACK RD., #300
PHOENIX, AZ 85016 MARICOPA COUNTY in the manner shown below:

in person.

Description: CAUC, Male, Approx. 70 yrs. of age, 5' 6" tall, Weighing 160lbs., GREY
Hair,

DON A. FOUTZ, ACPS                          Affiant
Sworn to before me the  Feb 12, 2009

JoAnn Florez                                Notary

My Commission expires: 02/25/2010

|                          |   |   |        |
|--------------------------|---|---|--------|
| SERVICE OF PROCESS       | $ |   | 16.00  |
| MILES                    | 8 | $ | 19.20  |
| SERVICE CHARGE           |   | $ | 5.00   |
| RUSH                     |   | $ | 15.00  |
| AFFIDAVIT PREP/NOTARY     |   | $ | 10.00  |
| TOTAL                    |   | $ | 65.20  |

1543544 18270
ORIGINAL

4X021543544

OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12  PM 3:23 ✓

JEANNE HICKS, CLERK

BY: _____ Beth Blanton

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                          CASE NO. CV20090183
          VS                               JUDGE HINSON
SAXON MORTGAGE, INC ET. AL.,

STATE OF ARIZONA            )              AFFIDAVIT OF SERVICE
MARICOPA COUNTY             )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/11/09 I received the SUMMONS;
VERIFIED COMPLAINT FOR VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT, REAL
ESTATE SETTLEMENT PROCEDURES ACT, FEDERAL TRUTH-IN-LENDING ACT, & FAIR CREDIT
REPORTING ACT; FRAUDULENT MISPREPRESENTATION; BREACH OF FIDUCIARY DUTY;  UNJUST
ENRICHMENT;  CIVIL CONSPIRACY;  CIVIL RICO;  QUIET TITLE TO REAL PROPERTY;  USURY;
AND FRAUD;  CERTIFICATE ON COMPULSORY ARBITRATION;   APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION;   PROPOSED
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRLIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
DEUTSCHE BANK TRUST COMPANY AMERICAS, BY SERVICE UPON ITS STATUTORY AGENT, C.T.
CORPORATION SYSTEM on 02/11/09 at 3:15 pm at 2394 E. CAMELBACK RD. PHOENIX, AZ
85016 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with MOLLY MARTINEZ, PROCESS
SPECIALIST, STATED AUTHORIZED TO ACCEPT.

Description: HISP, Female, Approx. 45 yrs. of age, 4' 6" tall, Weighing 130lbs.,
BROWN Hair,

DON A. FOOTZ  ACPS                      Affiant
Sworn to before me the   Feb 12, 2009

JoAnn Florez                            Notary

My Commission expires:  02/25/2010

SERVICE OF PROCESS $   16.00
SERVICE CHARGE     $    5.00
AFFIDAVIT PREP/NOTARY $ 10.00           1543545 18270         AX021543545
          TOTAL $     31.00            ORIGINAL

OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 12 PM 3: 23  ✓

JEANNE HICKS, CLERK

BY: Beth Planton

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

**GEORGE F. ROMBACH**                          CASE NO. CV20090183
                  VS                           JUDGE  HINSON
**SAXON MORTGAGE, INC ET. AL.,**

STATE OF ARIZONA                    )          AFFIDAVIT OF SERVICE
MARICOPA COUNTY                     )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/11/09 I received the SUMMONS;
VERIFIED COMPLAINT FOR VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT, REAL
ESTATE SETTLEMENT PROCEDURES ACT, FEDERAL TRUTH-IN-LENDING ACT, & FAIR CREDIT
REPORTING ACT; FRAUDULENT MISPREPRESENTATION; BREACH OF FIDUCIARY DUTY;  UNJUST
ENRICHMENT;  CIVIL CONSPIRACY;  CIVIL RICO;  QUIET TITLE TO REAL PROPERTY;  USURY;
AND FRAUD;  CERTIFICATE ON COMPULSORY ARBITRATION;   APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE:  PRELIMINARY INJUNCTION;   PROPOSED
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRLIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
FIDELITY NATIONAL TITLE AGENCY, INC., BY SERVICE UPON ITS STATUTORY AGENT, C.T.
CORPORATION SYSTEM on 02/11/09 at 3:15 pm at 2394 E. CAMELBACK RD. PHOENIX, AZ
85016 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with MOLLY MARTINEZ, PROCESS
SPECIALIST, STATED AUTHORIZED TO ACCEPT.

Description: HISP, Male, Approx. 45 yrs. of age, 5' 6" tall, Weighing 130lbs.,
BROWN Hair,

DON A. FOUTZ, ACPS                    Affiant
Sworn to before me the   Feb 12, 2009

JoAnn Florez                          Notary

My Commission expires:  02/25/2010

| | | |
|---|---|---|
| SERVICE OF PROCESS | $ | 16.00 |
| MILES          8 | $ | 19.20 |
| RUSH | $ | 15.00 |
| SERVICE CHARGE | $ | 5.00 |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 |
| TOTAL | $ | 65.20 |

1543546 18270
ORIGINAL

OFFICIAL SEAL 1543546
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

7

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 18  PM 3: 43

JEANNE HICKS, CLERK
*V. Rosa*

BY:_____

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                    CASE NO. CV20090183
          VS                         JUDGE  HOWARD HINSON
SAXON MORTGAGE, INC. ET AL.,         HEARING DATE: 02/26/09 @ 1:30 pm

STATE OF ARIZONA            )        AFFIDAVIT OF SERVICE
MARICOPA COUNTY             )
THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/12/09 I received the TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
SAXON MORTGAGE SERVICES, INC., BY SERVICE UPON ITS STATUTORY AGENT, CORPORATION
SERVICE COMPANY on 02/17/09 at 8:56 am at 2338 W. ROYAL PALM RD., SUITE J PHOENIX,
AZ 85021 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with ASHLEY MCUALIFFE, CLERK,
STATED AUTHORIZED TO ACCEPT.

Description: CAUC, Female, Approx. 35 yrs. of age, 5' 7" tall, Weighing 300lbs.,
BLUE Eyes, BROWN Hair,

CHAD BARBER, ACPS                          Affiant
Sworn to before me the    Feb 18, 2009

JoAnn Florez                               Notary

My Commission expires:  02/25/2010

|                        |    |       |
|------------------------|----|-------|
| SERVICE OF PROCESS     | $  | 16.00 |
| SERVICE CHARGE         | $  | 5.00  |
| AFFIDAVIT PREP/NOTARY  | $  | 10.00 |
| TOTAL                  | $  | 31.00 |

1544264 18270
ORIGINAL

AX021544264

OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2009 FEB 18  PM 3: 43

JEANNE HICKS, CLERK

BY: _V. Rosa_

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                              CASE NO. CV20090183
                VS                             JUDGE  HOWARD HINSON
SAXON MORTGAGE, INC. ET AL.,                   HEARING DATE: 02/26/09 @ 1:30 pm

STATE OF ARIZONA              )                AFFIDAVIT OF SERVICE
MARICOPA COUNTY               )

THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court.  On 02/12/09 I received the TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
DEUTSCHE BANK TRUST COMPANY AMERICAS, A BUSINESS ENTITY OF UNKNOWN FORM, BY SERVICE
UPON ITS STATUTORY AGENT, C.T. CORPORATION SYSTEM on 01/17/09 at 9:10 am at 2394 E.
CAMELBACK RD. PHOENIX, AZ 85016 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with GAIL FLOCK, PROCESS
SPECIALIST, STATED AUTHORIZED TO ACCEPT.

Description: CAUC, Female, Approx. 55 yrs. of age, 5' 2" tall, Weighing 200lbs.,
GREY Hair,



DON A. FOUTZ, ACPS                    Affiant
Sworn to before me the  Feb 18, 2009

JoAnn Florez                          Notary

My Commission expires:  02/25/2010

SERVICE OF PROCESS $    16.00
       MILES      8 $    19.20
SERVICE CHARGE      $     5.00
AFFIDAVIT PREP/NOTARY $  10.00         1544262 18270
         TOTAL $       50.20          ORIGINAL



OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

**2009 FEB 18  PM 3:43**

JEANNE HICKS, CLERK

BY: _V. Rosa_

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH                    CASE NO. CV20090183
          VS                         JUDGE  HOWARD HINSON
SAXON MORTGAGE, INC. ET AL.,         HEARING DATE: 02/26/09 @ 1:30 pm

STATE OF ARIZONA              )      AFFIDAVIT OF SERVICE
MARICOPA COUNTY               )

THE AFFIANT, being sworn, states: That I am a private process server registered in
MARICOPA COUNTY and an Officer of the Court. On 02/12/09 I received the TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each
document listed above upon:
FIDELITY NATIONAL TITLE AGENCY, A BUSINESS ENTITY OF UNKNOWN FORM, BY SERVICE UPON
ITS STATUTORY AGENT, C.T. CORPORATION SYSTEM on 02/17/09 at 9:10 am at 2394 E.
CAMELBACK RD. PHOENIX, AZ 85016 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with GAIL FLOCK, PROCESS
SPECIALIST, STATED AUTHORIZED TO ACCEPT.

Description: CAUC, Female, Approx. 55 yrs. of age, 5' 2" tall, Weighing 200lbs.,
GREY HAIR,

DON A. FOUTZ  ACPS                    Affiant
Sworn to before me the  Feb 18, 2009

JoAnn Florez                          Notary

My Commission expires:  02/25/2010

|                        |    |       |
|------------------------|----|-------|
| SERVICE OF PROCESS     | $  | 16.00 |
| SERVICE CHARGE         | $  | 5.00  |
| AFFIDAVIT PREP/NOTARY  | $  | 10.00 |
| TOTAL                  | $  | 31.00 |

1544263 18270            AX021544263
ORIGINAL

OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

**2009 FEB 18  PM 3:43**

JEANNE HICKS, CLERK

*V. Rosa*

BY:_____

HAWKINS and E-Z MESSENGER
1209 E. Washington Street
Phoenix, AZ 85034
(602) 258-8081  FAX: (602) 258-8864

IN THE ARIZONA SUPERIOR COURT
STATE OF ARIZONA COUNTY OF YAVAPAI

GEORGE F. ROMBACH
       VS
SAXON MORTGAGE, INC. ET AL.,

CASE NO. CV20090183
JUDGE  HOWARD HINSON
HEARING DATE: 02/26/09 @ 1:30 pm

| | |
|---|---|
| STATE OF ARIZONA | ) |
| MARICOPA COUNTY | ) |

AFFIDAVIT OF SERVICE

THE AFFIANT, being sworn, states: That I am a private process server registered in MARICOPA COUNTY and an Officer of the Court.  On 02/12/09 I received the TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION;

from GEORGE F. ROMBACH and by in each instance I personally served a copy of each document listed above upon:
SAXON MORTGAGE, INC., BY SERVICE UPON ITS STATUTORY AGENT, PRENTICE-HALL CORPORATION SYSTEM on 02/17/09 at 8:56 am at 2338 W. ROYAL PALM RD., SUITE J PHOENIX, AZ 85021 MARICOPA COUNTY in the manner shown below:

by leaving true copy(ies) of the above documents with ASHLEY MCUALIFFE, CLERK, STATED AUTHORIZED TO ACCEPT.

Description: CAUC, Female, Approx. 35 yrs. of age, 5' 7" tall, Weighing 300lbs., BLUE Eyes, BROWN Hair,

CHAD BARBER, ACPS                Affiant
Sworn to before me the    Feb 18, 2009

JoAnn Florez                 Notary

My Commission expires: 02/25/2010

1544265 18270
ORIGINAL

| | | |
|---|---|---|
| SERVICE OF PROCESS | $ | 16.00 |
| MILES          11 | $ | 26.40 |
| SERVICE CHARGE | $ | 5.00 |
| AFFIDAVIT PREP/NOTARY | $ | 10.00 |
| TOTAL | $ | 57.40 |

AX021544265

OFFICIAL SEAL
JOANN FLOREZ
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Exp. Feb. 25, 2010

8

Leonard J. McDonald, Jr.
State Bar No. 014228

 **TB** T I F F A N Y & B O S C O
P.A.

THIRD FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9240
TELEPHONE: (602) 255-6007
FACSIMILE:  (602) 255-0192

*Attorneys for Defendant Michael A. Bosco, Jr.*

SUPERIOR COURT
YAVAPAI COUNTY ARIZONA

2009 FEB 25  PM 12  01

JE__ __.C.NS. CLERK

DY:_____

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| GEORGE F. ROMBACH, and individual,<br><br>          Plaintiff,<br><br>     v.<br><br>SAXON MORTGAGE. INC., a corporation;<br>DEUTSCHE BANK TRUST COMPANY<br>AMERICAS, a business entity of unknown form;<br>FIDELITY NATIONAL TITLE, a business entity<br>of unknown form; MICHAEL A. BOSCO, JR., an<br>individual; DOES 1 through 100 inclusive; and<br>DOES 101 through 1000 inclusive,<br><br>          Defendants. | Case No.  CV20090183<br><br>**MOTION TO DISMISS** |

     Michael A. Bosco, Jr., through counsel undersigned, pursuant to Ariz. R. Civ. P.,
Rule 11(a). 12(b)(1) and (6), together with A.R.S. §33-807(E), moves to dismiss
Plaintiffs' Complaint as to only Michael A. Bosco, Jr., to sanction Plaintiffs' counsel and
to award Michael A. Bosco, Jr., his attorneys' fees and costs against Plaintiffs for having
to seek this dismissal, all for the reasons set forth hereafter in the accompanying
Memorandum of Points and Authorities, incorporated herein by this reference.

…

**DIV 4**

MAR 0 2 2009

RESPECTFULLY SUBMITTED this 24th day of February, 2009.

TIFFANY & BOSCO, P.A.

By: _____
     Leonard J. McDonald, Jr.
     Third Floor Camelback Esplanade II
     2525 East Camelback Road
     Phoenix, Arizona 85016-9240
     *Attorneys for Defendant Michael A. Bosco, Jr.*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Michael A. Bosco, Jr. is not the Trustee**

It is difficult, if not impossible, to understand the Plaintiff's allegations against Michael A. Bosco, Jr. Plaintiffs are the subject of a Trustee's Sale in which Michael A. Bosco, Jr. is serving as the substitute trustee. However, nowhere within Plaintiff's Complaint is there any specific reference to a wrongdoing by Michael A. Bosco, Jr. Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted as to Michael A. Bosco, Jr. and therefore this Complaint must be dismissed as to Michael A. Bosco, Jr.

**II.   Plaintiff's Complaint Violates A.R.S. §33-807(E).**

Controlling Arizona law clearly states that a Trustee, or a Substitute Trustee, is not a proper party in this type of a lawsuit.

A.R.S. §33-807(E) says:

> The trustee need only be joined as a party in legal actions pertaining to a breach of the trustee's obligation under this chapter or under the deed of trust. Any order of the court ordered against the beneficiary is binding upon the trustee with respect to any actions which the trustee is authorized to take by the trust deed or by this chapter. If the trustee is joined as a party in any other action, the trustee is entitled to be immediately dismissed and
>
> to recover costs and reasonable attorneys' fees from the person joining the trustee.

1     As the Court can see from reviewing the allegations contained in the Plaintiffs'

2   Complaint against Michael A. Bosco, Jr., whom they allege to be the Trustee, the

3   Plaintiffs do not allege that the Trustee has breached any obligation a Trustee owes

4   anyone under the chapter in which A.R.S. §33-807 is found, nor does the Complaint

5   allege that the Trustee has breached any obligation owed to anyone under the Deed of

6   Trust.

7     Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be

8   granted against Michael A. Bosco, Jr., and/or the real Substitute Trustee of the Deed of

9   Trust at issue in this case.

10     Michael A. Bosco, Jr. therefore requests that this Court immediately enter its

11   Order dismissing Michael A. Bosco, Jr. as a Party-Defendant in this action, together with

12   the awarding of Michael A. Bosco, Jr.'s costs and attorneys' fees incurred in connection

13   with its defense against Plaintiff's Complaint against Plaintiffs.

14     RESPECTFULLY SUBMITTED this 24TH day of February, 2009.

15                 TIFFANY & BOSCO, P.A.

16             By:

17                 Leonard J. McDonald, Jr.

18                 Third Floor Camelback Esplanade II
                   2525 East Camelback Road

19                 Phoenix, Arizona 85016-9240
                   *Attorneys for Defendant Michael A. Bosco, Jr.*

20

21

22

23   ORIGINAL of the foregoing filed
     this 25th day of February, 2009, with:

24

25   Clerk of the Court
     YAVAPAI COUNTY SUPERIOR COURT

26   120 South Cortez Street
     Prescott, AZ 86303

27

28

-3-

1   COPIES of the foregoing faxed
2   this 27th day of February, 2009, to:

3   Honorable Howard D. Hinson, Jr. *(928-771-3575)*
    Yavapai County Superior Court/Division 4
4   120 South Cortez Street
5   Prescott, AZ 86303

6   George Rombach
7   389 W. Rosser Street
    Prescott, AZ 86301
8   *Plaintiff*

9   By: _____

10  G:\WP\SaveMortgage Services, Inc\Rombach\Motion to Dismiss.doc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF YAVAPAI

```
┌─────────────────────────────┐
│          FILED              │
│ DATE: Feb. 26, 2009         │
│ 5:00 O'Clock p.m.           │
│ JEANNE HICKS, CLERK         │
│ BY: Lara Van Güse           │
│          Deputy             │
└─────────────────────────────┘
```

| | |
|---|---|
| DIVISION 4 | JEANNE HICKS, CLERK |
| HON. HOWARD D. HINSON | BY:  Lara Van Güse, Deputy Clerk |
| CASE NO. CV 20090183 | DATE:  February 26, 2009 |

| TITLE: | COUNSEL: |
|---|---|
| GEORGE F. ROMBACH, an individual | George Rombach |
| | 389 W. Rosser Street |
| Plaintiff, | Prescott, AZ   86301 |
| | (For Plaintiff) |
| -vs- | |
| SAXON MORTGAGE, INC. a corporation: DEUTSCHE BANK TRUST COMPANY AMERICAS, a business entity of unknown form; FIDELITY NATIONAL TITLE, a business entity of unknown form; MICHAEL A. BOSCO, JR., an individual; DOE 1 through 100 inclusive; and DOES 101 through 1000 inclusive, | Leonard McDonald, Esq. |
| | TIFFANY & BOSCO |
| | Third Floor Camelback Esplanade II |
| | 2525 East Camelback Road |
| | Phoenix, AZ   85016 |
| | (For Defendant Bosco) |
| Defendants. | |

| HEARING ON: | NATURE OF PROCEEDINGS | COURT REPORTER |
|---|---|---|
| Order to Show Cause | | Holly Draper |

START TIME: 1:29 p.m.

APPEARANCES:   George Rombach, Plaintiff, Appearing Telephonically
Leonard McDonald, for Defendant Michael Bosco, Appearing Telephonically

The Court has received a motion to dismiss filed by Counsel McDonald

Mr. Romach advises he has received a copy of the motion.

Counsel McDonald and the Plaintiff argue the motion to dismiss.

The Court grants the motion to dismiss defendant Michael Bosco.   The Court directs Counsel McDonald to provide an order dismissing Mr. Bosco and an appropriate application for recovery of fees and costs.

Plaintiff advises service was completed on Defendant Saxon on February 11, 2009.

The Court finds service complete against the defendants, specifically, the beneficiary.   No person or entity appearing in this matter, the Court orders a preliminary injunction shall issue staying the beneficiary from any further proceedings in foreclosure.

The Court directs the Plaintiff to submit a form of order issuing a preliminary injunction and provide notice to the parties.

END TIME: 1:40 a.m.